IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| HAROLD KELLY MURPHY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No.: 2:06-cv-618-MEF |
| | ) |
| SOUTHERN ENERGY HOMES, INC., | ) |
| et al., | ) |
| | ) |
|     Defendants. | ) |

**BRIEF IN SUPPORT OF MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW the Defendant, Southern Energy Homes, Inc. ("Southern"), and submits the following Brief in Support of its Motion for Judgment on the Pleadings.

**I.   Introduction**

This law suit is one among dozens of individual and class action cases pending in federal courts, state courts and private arbitrations in Alabama and Louisiana. In these actions, plaintiffs claim that manufactured homes produced by most major manufactured housing companies, and sold into certain coastal and inland regions from Texas to North Carolina,[1] are defective because the exterior walls of such homes are constructed with interior vapor barriers. This theory of recovery overlooks the fact that walls with interior vapor barriers conform to the federal building code for manufactured homes. 24 C.F.R. §

---

[1] These areas are known as the "humid and fringe zone climates." The counties included in these regions were identified in the Federal Register at 67 F.R. 20402-20403 (April 24, 2002), and are now listed in 24 C.F.R. § 3290.504(b)(4).

3280.504(b)(1).[2] Accordingly, Southern is due judgment on the pleadings because Plaintiff's claims are preempted by federal law.

Southern is not aware of any other Alabama court that has decided the issue of federal preemption in the context of a manufactured home wallboard claim. This issue appears to be one of first impression in the Eleventh Circuit. However, on January 26, 2007, the United States District Court for the Western District of Louisiana, in *Russell J. Guidroz, Jr. v. Champion Enterprises, Inc.*, Civil Number 05-1148 (referred to hereafter as "*Guidroz*"), dismissed a class action complaint with nearly identical claims based on the defense of federal preemption, among other reasons. (*See Guidroz* Opinion, attached hereto as Exhibit A)[3]

Based on *Guidroz*,[4] and other authorities cited herein, Southern respectfully requests that this Court: (1) hold that the Plaintiff's claims are preempted by federal law; and (2) enter an order granting Southern judgment on the pleadings, pursuant to Fed.R.Civ.P. 12(c).

## II.  Motion for Judgment on the Pleadings Standard

"Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts." *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370

---

[2] Manufactured homes are regulated by the Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401 et seq. ("MHCSSA"). The manufactured home building code is promulgated by the United States Department of Housing and Urban Development ("HUD"). The "HUD Code," as it is commonly referred, is located at 24 C.F.R. § 3280.

[3] Plaintiffs have moved the court for leave to amend their complaint and allege a claim that is not preempted.

[4] Pursuant to Fed.R.Civ.P. 10(c), Southern incorporated each of the arguments and authorities discussed in *Guidroz*, as if fully set forth herein.

(11th Cir. 1998); Fed.R.Civ.P. 12(c).  A court accepts facts in a complaint as true, and views them in a light most favorable to the nonmoving party.  *Ortega v. Christian*, 85 F.3d 1521, 1524 (11th Cir. 1996).  The complaint may not be dismissed "'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  *Slagle v. ITT Hartford*, 102 F.3d 494, 497 (11th Cir. 1996)(*quoting Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-02, 2 L. Ed. 2d 80 (1957)).

### III.   Factual Background

In December, 2003, the plaintiff, Harold Kelly Murphy ("Murphy"), purchased a new Southern double-wide manufactured home for $45,639.90.  (Complaint, ¶ 7)[5] Murphy alleges that "[t]he manufactured homes designed and manufactured by [Southern], including the manufactured home purchased by [Murphy], have an improper design and construction of exterior walls."  (Complaint, ¶ 4)  It is undisputed that Southern constructed the exterior walls of Murphy's home with an interior vapor barrier, which is expressly permitted under the HUD Code.  24 C.F.R. § 3280.504(b)(1).

Murphy alleges the following claims: (1) violation of the Magnuson Moss Act; (2) breach of express warranty; (3) breach of the implied warranty of merchantability; (4) breach of the implied warranty of fitness for a particular purpose; (5) breach of the implied warranty of habitability; (6) negligence; (7) wantonness; (8) unjust enrichment; (9) fraudulent concealment; (10) negligent/wanton fraudulent concealment; and (11) violation of Alabama's extended manufacturer's liability doctrine.  (Complaint, pp. 4-11) All such claims arise out of the factual allegation that the exterior walls of the home are

---

[5] The Complaint is located at Exhibit C to Southern's Notice of Removal.

3

designed with interior vapor barriers. Murphy seeks compensatory damages, attorney's fees, costs and punitive damages, or alternatively, that Southern disgorge all monies received in the transaction because the home is "worthless." (Complaint, pp. 4-11).

Southern pled "federal preemption" as an affirmative defense in its Answer. (Answer, ¶ 57)

## IV. Argument

### A. The Applicable HUD Code Provisions

Exterior wall design in manufactured homes is governed by 24 Code of Federal Regulations, Section 3280.504(b). In the 2003 time period (when Murphy purchased his home) the HUD Code set forth three different exterior wall design options:

(1) Exterior walls;

(2) Exterior walls must have a vapor retarder[6] with a permeance no greater than 1 perm (dry cup method) installed on the living space side of the wall;

(3) Unventilated wall cavities must have an external covering and/or sheathing that forms the pressure envelope. The covering and/or sheathing must have a combined permeance of not less than 5.0 perms. In the absence of test data, combined permeance is permitted to be computed using the following formula: P total = $(1/[(1/P[1]) + (1/P[2])])$, where P[1] and P[2] are the permeance values of the exterior covering and sheathing in perms. Formed exterior siding applied in sections with joints not

---

[6] The terms "vapor retarder" and "vapor barrier" are interchangeable.

caulked or sealed, are not considered to restrict water vapor transmission; or

(4) All cavities must be constructed so that ventilation is provided to dissipate any condensation occurring in these cavities.

24 C.F.R. § 3280.504(b).[7]

Additionally, on April 24, 2002, HUD issued a "waiver," outside the HUD Code, which gave manufacturers a fourth option. Under the waiver, manufacturers had the option of constructing exterior walls with exterior vapor barriers in the humid and fringe climate zones. (67 F.R. 20400–20403 (April 24, 2002)). "Waiver" is a term of art under the HUD Code: "[w]here a waiver has been issued, the requirements of the Federal Standard to which the waiver relates may be met either by meeting the specifications set out in the Standard or by meeting the requirements of the waiver published in the Federal Register." 24 C.F.R. § 3280.8. Thus, Southern could have selected from any of four different wall designs in the Murphy home: (1) walls with interior vapor barriers (Section 504(b)(1)); or (2) walls with unventilated exterior walls and no vapor barrier (Section 504(b)(2)); or (3) ventilated exterior walls (Section 504(b)(3)); or (4) walls with exterior vapor barriers under the waiver (67 F.R. 20400–20403 (April 24, 2002)).

---

[7] Section 3280.504(b) now sets forth a fourth option at Section 504(b)(4); however, that option did not become available until May 30, 2006. The Murphy's home was sold in 2003; therefore, Section 504(b)(4) did not apply.

Importantly, HUD never placed a geographical limitation on the location of homes constructed with interior vapor barriers under Section 504(b)(1) (as in the Murphy home). The HUD Code has expressly permitted the use of interior vapor barriers in homes throughout the country since the inception of the HUD Code itself in 1975. 40 F.R. 58752 (December 18, 1975).[8]

Murphy's claims are preempted because the exterior walls of his home comply with the HUD Code. As discussed fully in the next section, the HUD Code, and its implementing statutes, set forth preemption provisions that preclude the application of standards of care that are not "identical to" the HUD Code. Thus, private litigants cannot maintain suits against manufacturers based on a manufacturer's compliance with federal law.

### B. Federal Preemption Standards

The preemption doctrine is based on the Supremacy Clause of Article VI of the U.S. Constitution, and provides that federal legislation enacted pursuant to Congress' constitutionally delegated authority can nullify conflicting state or local actions. U.S. Const. Art VI, § 2. Federal administrative regulations have the same preemptive effect as federal statutes. *Fidelity Federal Savings & Loan Assoc. v. de la Cuesta*, 458 U.S. 141, 153-54 (1982); *Turner v. PFS Corp.*, 674 So. 2d 60, n.1 (Ala. 1995)(recognizing this principle in a HUD Code case). Furthermore, federal preemption displaces not only state statutory and administrative laws, but also judicial decisions based on tort law. *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959).

---

[8] By contrast, homes with exterior vapor barriers built under the waiver may not be sold outside of the humid and fringe zone climates. 67 F.R. 20401 (April 24, 2002); 24 C.F.R. § 3280.504(b)(4).

Federal law may preempt state or local law in any of three ways: (1) expressly; (2) impliedly where Congress occupies an entire field of regulation; and (3) impliedly where a local law conflicts with federal law. *Michigan Canners and Freezers Assoc., Inc. v. Agricultural Marketing and Bargaining Bd.*, 467 U.S. 461, 470 (1984). Express preemptive language may be found on the face of a statute, in its legislative history and in regulations promulgated pursuant to law. *Howard v. Uniroyal, Inc.*, 719 F.2d 1552, 1556 (11th Cir. 1983). The preemptive reach of federal regulations is a question of departmental intent, and the opinion of the agency is entitled to some weight. *Geier v. American Motor Honda Co., Inc.*, 529 U.S. 861, 883 (2000). In the absence of express pre-emptive language, Congress may indicate an intent to occupy an entire field of regulation; in which case, the states must leave all regulatory activity in that area to the federal government. *E.g., Fidelity Federal Savings & Loan Assn. v. De la Cuesta*, 458 U.S. 141, 153 (1982); *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Additionally, if Congress has not displaced state regulation entirely, it may nonetheless pre-empt state law to the extent that the state law actually conflicts with federal law. *English v. General Electric Co.*, 496 U.S. 72, 79 (1990). This is known as conflict preemption. Such a conflict arises when compliance with both state and federal law is impossible, *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963), or when the state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941). Federal law preempts Murphy's claims both expressly and impliedly.[9] Express

---

[9] Southern does not argue that the HUD Code gives rise to a field preemption argument.

preemptive language is found both in the MHCSSA, and the HUD Code. 42 U.S.C. § 5403(d); 24 C.F.R. § 3282.11.

In 1974, Congress enacted the MHCSSA in order to regulate construction standards in the manufactured housing industry. The purposes of the MHCSSA are: (1) to protect the quality, durability, safety and affordability of manufactured homes; (2) to facilitate the availability of affordable manufactured homes and to increase homeownership; (3) to provide for the establishment of practical, uniform, and, to the extent possible, performance-based Federal construction standards for manufactured homes; (4) to encourage innovative and cost-effective construction techniques for manufactured homes; (5) to protect residents of manufactured homes with respect to personal injuries and property damage in manufactured housing, consistent with the other purposes of the Act; (6) to establish a balanced consensus process for the development, revision, and interpretation of Federal construction and safety standards for manufactured homes and related regulations for the enforcement of such standards; (7) to ensure uniform and effective enforcement of Federal construction and safety standards for manufactured homes; and (8) to ensure that the public interest in, and need for, affordable manufactured housing is duly considered in all determinations relating to the Federal standards and their enforcement. 42 U.S.C. § 5401.

The MHCSSA sets forth an express preemption provision that displaces any local standard that is not "identical to" the federal standard:

> (d) Supremacy of Federal standards. Whenever a Federal manufactured home construction and safety standard established under this title [42 USCS §§ 5401 et seq.] is in effect, no State or political subdivision of a State shall have any authority either to establish, or to continue in effect, with respect to any manufactured home covered, any standard regarding construction or safety applicable to the same aspect of performance of

8

such manufactured home which is not identical to the Federal manufactured home construction and safety standard.

42 U.S.C. § 5403.

HUD promulgated a regulation that implemented the preemption policy of Congress. HUD echoed congressional intent through a regulation that expressly preempts any local standard that is not "identical to" the federal construction standard:

> § 3282.11 Preemption and reciprocity.
> (a) No State manufactured home standard regarding manufactured home construction and safety which covers aspects of the manufactured home governed by the Federal standards shall be established or continue in effect with respect to manufactured homes subject to the Federal standards and these regulations unless it is identical to the Federal standards. . .

24 C.F.R § 3282.11(a).

In late December 2000, Congress amended and expanded the scope of the MHCSSA's preemption clause to provide that federal preemption is to be broadly and liberally construed:

> Federal preemption under this subsection shall be broadly and liberally construed to ensure that disparate State or local requirements or standards do not affect the uniformity and comprehensiveness of the standards promulgated under this section nor the Federal superintendence of the manufactured housing industry as established by this title.

42 U.S.C. § 5403(d); *Burton v. City of Alexander*, No. 99-D-1233-E, 2001 U.S. Dist. LEXIS, 6651, *26 (M.D. Ala. March 20, 2001).

Not all local standards are preempted under the HUD Code. The MHCSSA sets forth a savings clause, which provides that "[c]ompliance with any Federal manufactured home construction or safety standard . . . does not exempt any person from any liability under common law. 42 U.S.C. § 5409(c).

Furthermore, the MHCSSA also sets forth a state court jurisdiction provision, which provides:

> Nothing in this chapter shall prevent any State agency or court from asserting jurisdiction under State law over any manufactured home construction or safety issue with respect to which no Federal manufactured home construction and safety standard has been established pursuant to the provisions of section 5403 of this title.

42 U.S.C. § 5422(a).

In 1997, HUD published a guideline, clarifying its position on HUD Code preemption. There, HUD confirmed that federal preemption doctrine precludes state laws from interfering with specific aspects of federal performance standards in the HUD Code:

> Additional questions arise in situations in which the state or locality attempts to apply its own building or safety code to the manufactured home. Under § 604 of the Act, State law is preempted whenever there is a state performance standard regarding construction and safety that is not identical to an established federal standard. On the other hand, § 623 of the Act provides that Federal law does not preempt State construction or safety standards for which a Federal standard has not been established. Thus, for there to be Federal preemption, there must be a specific aspect of a Federal performance standard which duplicates a local standard.
>
> Federal preemption cannot be based upon a general purpose of the Act, or the need for national uniformity in the manufactured housing industry. The courts have applied this "aspect of performance" standard in analogous situations by focusing not on the purpose or scope of the Act, but, rather, on the specific requirements of an established Federal standard. If the Federal standard is encompassed or impacted by the State requirement, the State law is preempted.

62 F.R. 3456 (Jan. 23, 1997).

**1. Express Preemption**

The leading case on HUD Code preemption in this Circuit is *Scurlock v. City of Lynn Haven, Florida*, 858 F.2d 1521 (11th Cir. 1988). In *Scurlock*, the Eleventh Circuit Court of Appeals held that Section 5403(d) of Title 42 expressly preempted a local zoning ordinance that imposed greater safety requirements for manufactured homes than those mandated by federal law. *Scurlock*, 858 F.2d at 1522-24. According to the court, local standards "that differ in any respect" from the standards developed by HUD are expressly preempted. *Id.*

The HUD Code also preempts common law claims that seek to impose standards of care that differ from the HUD Code. In *Turner v. PFS Corp.*, 674 So. 2d 60 (Ala. 1995), the Alabama Supreme Court held that common law claims that apply the HUD Code standard of care are not preempted; whereas common law claims that seek to impose a "non-identical" state standard of care are preempted. *Id.* at 63; *see also Woolridge v. Redman Homes, Inc.*, 792 F. Supp. 1469 (N.D. Tex. 1991).

Murphy's claims are expressly preempted here because he seeks to impose a non-identical state standard of care in this case. Murphy would have this court retroactively re-write the HUD Code to eliminates Section 3280.504(b)(1) altogether in the humid and fringe zone climates, and then hold Southern liable for violating the new "Murphy" standard. Federal law does not permit such a result because Murphy seeks to impose a local standard that differs from the HUD Code. Accordingly, Southern respectfully requests that this court grant Southern judgment on the pleadings based on the express preemption doctrine.

**2. Implied Preemption**

In *Guidroz*, the federal court for the Western District of Louisiana held that state law claims based on a manufacturer's use of interior vapor barriers in the humid and fringe zone climates were impliedly preempted under conflict preemption principles. *Guidroz*, at Exhibit A, pp. 22-29. In so holding, the court relied extensively on a United States Supreme Court decision, *Geier v. American Honda Motor Co., Inc.*, 529 U.S. 861 (2000).

In *Geier*, the plaintiff filed suit to recover money damages arising out of an automobile accident. Plaintiff's car was equipped with a seat belt, but not a driver's-side airbag. At the time of the *Geier* suit, federal law permitted manufacturers to design cars either with seat belts or airbags. *Id.* at 864-65. Like the MHCSSA, the federal law at issue in *Geier*, the National Traffic and Motor Vehicle Safety Act of 1966, set forth both an express preemption provision and a savings clause that is nearly identical the same provisions in the MHCSSA. *Guidroz*, at Exhibit A, p. 18. The United States Supreme Court held that the plaintiff's claims were impliedly preempted because the rule of state tort law advocated by the plaintiff would have stood as an obstacle to the accomplishment of federal objectives. *Geier*, 529 U.S. at 881. If the plaintiff's claims were allowed to proceed, then a state rule of law would effectively eliminate one of the chosen federal methods of design. Federal preemption law does not permit such a result. *Id*; *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 524 (1981) (holding that the Employee Retirement Income Security Act of 1974 preempted state law which "eliminates one method for calculating pension benefits-- integration -- that is permitted by federal law"); *Fidelity Federal Savings & Loan Association v. de la Cuesta*, 458 U.S. 141, 155 (1982)(a state common law rule cannot take away the flexibility provided by a federal regulation,

and cannot prohibit the exercise of a federally granted option); *Griffith v. General Motor Corp.*, 303 F.3d 1276, 1280-82 (11th Cir. 2002)(same); *Hurley v. Motor Coach Industries, Inc.*, 222 F.3d 377, 381-82 (7th Cir. 2000)(same); *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998)( "a state cannot impose common law damages on individuals for doing what a federal act or regulation 'authorized them to do.'")(*quoting Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co.*, 450 U.S. 311, 318-320 (1981)).

The same concerns are raised by Murphy's claims. Murphy seeks to eliminate one of the federally mandated choices for exterior wall design – interior vapor barriers under Section 3280.504(b)(1). Such a result would not only re-write the HUD Code retroactively, but also second-guess HUD's decision *not to* limit the use of interior vapor barriers throughout the United States. *Guidroz*, at Exhibit A, pp 28-29. Murphy should not be permitted to impose a local tort standard that conflicts with HUD's rule-making authority and eliminates federally-approved construction design choices.

## V.  Conclusion

Southern respectfully urges this court to grant Southern judgment on the pleadings, pursuant to Fed.R.CivP. 12(c), because federal law expressly and/or impliedly preempts Murphy's claims.

      Respectfully submitted,

/s W. Scott Simpson_____
W. Scott Simpson, Attorney for Defendant
Southern Energy Homes, Inc.

**OF COUNSEL:**
RITCHEY & SIMPSON, PLLC
3288 Morgan Drive, Suite 100
Birmingham, Alabama 35216
Telephone: (205) 822-3422
Facsimile:  (205) 822-3618
Email: wssimpson@bellsouth.net

## CERTIFICATE OF SERVICE

I hereby certify that on ___9th___ of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Charles Lance Gould**
  lance.gould@beasleyallen.com holly.stroh@beasleyallen.com
- **Carter Gibson Vance**
  gibson.vance@beasleyallen.com heidi.bowers@beasleyallen.com


       /s W. Scott Simpson
       Of Counsel