UNITED STATES DISTRICT COURT -- WESTERN DISTRICT OF LOUISIANA
LAFAYETTE/OPELOUSAS DIVISION

| | |
|---|---|
| RUSSELL J. GUIDROZ, JR. AND<br>MICHELLE L. GUIDROZ,<br>INDIVIDUALLY AND AS<br>REPRESENTATIVES<br>ALL PERSONS SIMILARLY SITUATED<br><br>VS.<br><br>CHAMPION ENTERPRISES, INC. AND<br>REDMAN HOMES, INC | § § § § § § § § § § § §    Civil Action No. 05-1148 L-O<br><br><br><br><br><br>Magistrate Judge Hill |

### FIRST AMENDED CLASS ACTION COMPLAINT

1.  NOW INTO COURT, through undersigned counsel, come Plaintiffs, Russell J. Guidroz, Jr. and Michelle L. Guidroz, individually and as representatives of all persons and/or entities similarly situated, who, with leave of Court, make this First Amended Class Action Complaint and allege as follows:

2.  This is a class action brought pursuant to Rule 23 of the Federal Rules of Procedure by Plaintiffs, individually, and on behalf of all other persons and/or entities similarly situated (Plaintiffs and the members of the proposed class shall be referred to collectively as "Plaintiffs"), to obtain relief from defendants, individually, jointly, severally and *in solido* on the causes of action stated herein.

### THE PARTIES – PLAINTIFFS

3.  Plaintiffs, Russell J. Guidroz, Jr. and Michelle L. Guidroz, (collectively sometimes referred to as "the Guidrozes") are persons of the full age of majority and domiciled in the Parish of St. Mary, State of Louisiana. Plaintiffs are Members of the

EXHIBIT 5

Plaintiff Class defined herein, will adequately represent the interests of the Plaintiff Class, and seek to be certified as Class Representatives of this Class.

## THE PARTIES – DEFENDANTS

4.   Defendant, Champion Enterprises, Inc. ("Champion") is a Michigan corporation headquartered at 2701 Cambridge Court, Suite 300, Auburn Hills, Michigan. Champion is the parent corporation for a family of alter ego companies that manufacture and retail manufactured and modular housing that comprise a single business enterprise under the laws of Louisiana. The names of the alter ego subsidiary companies or divisions under which Champion conducts its single business enterprise include, but are not limited to, the following: Redman Homes, Inc., Redman Home Builders, Moduline Industries, Summit Crest Homes, Silvercrest Homes, Atlantic Homes, Titan Homes, Fortune Homes, Commander Homes, Dutch Housing, Gateway Homes, Advantage Homes, Homes of Legend, Homes of Merit, Chandeleur Homes, Genesis Homes and Champion Homes. (hereinafter collectively referred to as the "Champion Group").

5.   Defendant, Redman Homes, Inc. ("Redman"), is a Delaware corporation with its principal office at 2701 Cambridge Ct., Ste. 300, Auburn Hills, Michigan, 48326. Redman, as a wholly owned subsidiary of Champion, is a member of the Champion single business enterprise that comprises the Champion Group. Redman can be served in this matter through its registered agent CT Corporation System, 8550 United Plaza Blvd., Baton Rouge, LA 70809.

## JURISDICTION

6. The court has jurisdiction over the lawsuit under 28 U.S.C. §1332(a)(1) because the plaintiffs and the defendants are citizens of different states, and the amount in

2

controversy exceeds $75,000, exclusive of interest and costs.

## INTRODUCTION

7. This is an action under the Louisiana laws of redhibition and the Louisiana Products Liability Act ("LTLA"). This class action seeks the rescission of sales of manufactured homes defectively designed and manufactured by the Champion Group that were purchased by Plaintiffs during the class period and to recover damages incurred by Plaintiffs for which remedies are provided in Articles 2531 and/or 2545 of the Louisiana Civil Code. Alternatively, Plaintiffs seek damages from defendants for their liability as the manufacturers of unreasonably dangerous products because of design, inadequate warning and nonconformity to express warranty under the provisions of the LPLA.

8. The design and manufacturing defect of the manufactured homes in this matter consist of a uniform and specific nature that constitute the predominant common factual basis for this class action in redhibition and for violations under the LTLA.

9. The manufactured homes designed and manufactured by the Champion Group, and purchased by Plaintiffs, have defectively designed and constructed moisture control performance, exterior walls, wall cavities, and exterior coverings and/or ventilation systems, in violation of the HUD Manufactured Home Construction and Safety Standards. Specifically, the defective manufactured homes use a design that incorporates a vapor barrier on the "living side" of the wall structures combined with wall cavities and external coverings or sheathing and/or ventilation systems that causes moisture to accumulate and remain in the wall cavities of manufactured homes for sale and use in Louisiana – a Gulf State known for hot and humid climatic conditions. The Champion Group's construction of manufactured homes that causes moisture to

condense, accumulate and remain in the walls and wall cavities does not comply with accepted engineering practices to insure durable, livable, and safe housing as set forth in HUD standards Title 24 of the Code of Federal Regulations §§ 3208.303. The manner in which Defendants design and construct their products with wall cavities ventilated to the outside ambient air and/or ventilation systems that create negative pressure conditions in the wall structures for homes in the Gulf Coast region has led to or will lead to excessive accumulation of vapor condensation and a contiguous moisture problem throughout the exterior wall structures of the manufactured homes utilizing this design. The moisture environment within the walls and wall cavities is a performance failure created by the defective design and construction and has led or will lead to premature deterioration of wall materials, warping or weakening of wall materials, development of "soft walls", and to an extreme amount of mold and fungal growth throughout the wall structure thereby creating elevated exposure to such mold and fungal growth to occupants. The moisture control performance failure described in this paragraph caused by common design and manufacture defects is sometimes referred to herein as "the redhibitory defect". If a manufacturer chooses to utilize option 1 of 24 CFR 3280.504(b) and place a vapor barrier on the "living side" of the exterior walls, it still has a duty to take steps to ensure that option 1 is implemented correctly by ensuring the home performs in the manner prescribed in, among others, sections 3280.103(b) (ventilation system "shall not create a negative pressure condition") and/or 3280.504 ("Condensation control and installation of vapor retarders") and/or 3280.505 ("The opaque envelope shall be designed and constructed to limit air infiltration to the living area of the home. Any design, material, method or combination thereof which accomplishes this goal may be used.") and/or

3280.303(b) (All construction methods shall be in conformance with accepted engineering practices...").

10. The redhibitory defect renders the manufactured homes totally useless or so inconvenient as a residence or dwelling structure that Plaintiffs are entitled to the legal presumption set forth in Civil Code Article 2520, i.e., that Plaintiffs would not have purchased the manufactured homes had they known of the redhibitory defect.

11. The redhibitory defect existed at the time of delivery of manufactured homes to the Plaintiffs. Accordingly, Plaintiffs are entitled to rescind the sale.

### FACTS RELEVANT TO PLAINTIFFS RUSSELL J. GUIDROZ, JR. AND MICHELLE L. GUIDROZ

12. The Guidrozes are husband and wife. On or about February 20, 1997, the Guidrozes entered into a written agreement with defendants' distributor, Royer's Manufactured Homes of Opelousas, Inc. for the financed purchase of a new 1997 Redman manufactured home, a Brighton 6935B model, serial number 14718887. The listed cash sale price with sales tax for the manufactured home was $32,276.75.

13. On or about March 31, 1997, Plaintiffs purchased the Redman manufactured home and entered into a Manufactured Home Retail Installment Contract and Security Agreement. Plaintiffs were provided written manufacturer warranty documents that expressly warranted that the manufactured home was free from defect.

14. The Redman manufactured home was originally delivered to Oakdale, Louisiana. In March 2001, the Guidrozes moved the manufactured home to Bayou Vista, St. Mary Parish, Louisiana where they currently reside.

15. In September, 2004, Plaintiffs noticed that the vinyl-covered sheetrock of the interior walls of their Redman manufactured home had become "soft". Upon applying a minimum of force with his bare hand to the "soft" sheetrock, Guidroz's hand broke through the sheetrock revealing wet material behind the vinyl covering and in the sheetrock panel in a state of decomposition due to the accumulation of moisture. In addition to the wet sheetrock material, Plaintiffs discovered what appeared to be mold growing within the interior of the walls.

16. Following the discovery of the wet, deteriorating sheetrock and mold, Plaintiffs contacted their property insurer, Allstate Insurance Co., to make a claim on the damage. The claim was denied by Allstate as the wet sheetrock and mold growth was not caused by a leak but was caused by excessive vapor condensation within the exterior walls of the manufactured home due to a construction defect, namely, the absence of design features to prevent excessive and accumulating water condensation within the sheetrock and wall cavities.

17. After the denial of the insurance claim, in the latter part of July, Plaintiffs tried to reach Redman Homes, Inc. by telephone to report the damage from the moisture accumulation construction defect. Plaintiffs were advised that Redman had been acquired or merged with the Champion Group and that they needed to contact Gateway Homes for service requests. Plaintiffs contacted Gateway Homes by telephone by the end of September 2004 and described the problems and damages arising from the defective outer wall system in the manufactured home and requested that the defects be repaired.

18.  Gateway Homes and/or anyone from the Champion Group failed to timely respond or repair the redhibitory defect and the resulting damages. Due to health concerns caused by the presence of mold and the continuing deterioration of the wet sheetrock, Plaintiffs moved out of the defective manufactured home and were required to incur the expense of making alternative housing arrangements.

19.  It was not until October 21, 2004 that a Gateway representative responded to the Plaintiffs' call for repairs. A person called stating that he was going to survey the manufactured home for potential repairs. On October 22, 2004, two representatives on behalf of Gateway arrived at the manufactured home location in Bayou Vista to inspect the manufactured home. While inspecting the wet sheetrock and mold growth, one of the inspectors leaned against one of the "soft" walls and broke through the sheetrock. After a brief inspection of the premises, the representative indicated that someone from Gateway would call Plaintiffs concerning repairs, if any.

20.  In January 2005, three months after Plaintiffs notified defendants of the problem, a Gateway representative wrote a letter that denied the existence of a "manufacturing defect" but expressed that Gateway "would like to repair the home...repairs would include removing the damaged materials caused by the condensation and replacing them with new material." Gateway failed to offer any repairs or correction of the underlying problem, i.e., the defective design and construction of the exterior walls, wall cavities and external covering in plaintiffs' manufactured home.

21.  The defect in the design and manufacture of Guidrozes' Redman manufactured home is identical to the redhibitory defect and existed at the time of purchase.

## FACTS RELEVANT TO DEFENDANTS CHAMPION AND REDMAN

22. Since 1953, Champion and its subsidiaries, including Redman, have built and sold more than 1.6 million manufactured and modular homes. During the class period, thousands of those manufactured homes were sold in Louisiana to consumers such as the Guidrozes and members of the Plaintiff Class.

23. Champion, through and with its wholly owned subsidiaries, including Redman, constitute a single business enterprise in the manufacture and sale of their manufactured homes.

24. As revealed on the Champion website at www.championhomes.net and the SEC filings for Champion, including Champion's Form 10-k's filed during the class period, Champion operates the manufacturing and sales of manufactured homes by its subsidiaries, including Redman, as a unified and single business enterprise in the following particulars:

    a. For stockholder and investment relations, as well as SEC filings, Champion reports a unified "family of homebulders" to describe its manufacturing capabilities, employees and facilities;

    b. For SEC filings of Annual Reports, Quarterly Reports and 10-k's, Champion uses condensed and consolidated financial statements for Champion Enterprises, Inc. and its subsidiaries, including Redman, in reporting statements of operations, balance sheets, statements of cash flow and statements of shareholders' equity;

    c. The subsidiaries, including Redman, are wholly owned and controlled by Champion;

    d. Champion and its subsidiaries, including Redman, have common directors and officers;

    e. Champion directs subsidiaries to provide services of employees of one subsidiary corporation on behalf of another subsidiary corporation, as demonstrated by Gateway doing warranty service for Redman;

    f. Champion provides common offices, centralized accounting and employee insurance and benefits to its subsidiaries and their employees;

    g. Champion has common marketing and engineering departments that work with the subsidiaries' manufacturing facilities providing designs for local consumer markets and the Champion engineering division provides day-to-day supervision over the manufacturing operations of its subsidiaries;

    h. Champion has debt agreements and debt structure that are guaranteed by its subsidiaries, including Redman, with covenant terms that significantly restrict the subsidiaries abilities to operate as separate and independent entities; and

    i. Champion's parent-subsidiary organization constitutes excessive fragmentation of a single enterprise into separate corporations.

25. Considering the above factors, Champion and its subsidiaries, including Redman, are a single business enterprise, whose collective manufactured products, i.e. manufactured homes, are the de facto and de jure products of Champion regardless of which specific subsidiary's facility constructed the manufactured homes or what subsidiary's name is shown as "manufacturer" of the data plate or registration documents of manufactured home.

26. During the class period, Champion sold thousands of manufactured homes with the redhibitory defect to members of the class in Louisiana, including the sale to the Guidrozes, yet failed to disclose the redhibitory defect, despite its knowledge of the existence of the defect, at the time of sale.

## CLASS ACTION ALLEGATIONS

27. This action is brought as a class action under Rule 23 of the Federal Rule of Procedure. Plaintiffs bring this class action to secure redress on behalf of all purchasers of the Champion homes in Louisiana similarly situated to them who have suffered damages as a consequence of the defectively designed and constructed manufactured homes and the failure to give adequate warnings regarding the defects and nonconformity to express warranties. Plaintiffs bring this action individually, and on behalf of all persons similarly situated, and seek certification of the following Plaintiff Class:

> All persons or entities who have incurred damages as a result of moisture control performance failure in manufactured homes purchased in Louisiana, on or after May 15, 1995 through the time of trial of this matter, that were manufactured by Champion or its subsidiaries, that have a vapor barrier located on the living side of exterior walls combined with wall cavities and/or exterior coverings or sheathing and/or ventilation systems that cause moisture from outside air to condense, accumulate and remain in the wall cavities and wall structural materials, all in violation of accepted engineering practices and performance standards and/or one or all of the provisions of Title 24 of the Code of Federal Regulations §§ 3280.103(b), 3280.303(b), 3280.504 and/or 3280.505. Specifically excluded from this class is any person with claims for personal injury arising from this type of defect.

28. On information and belief, membership in the Class is so numerous as to make it impractical to bring all Class Members before the Court as individual plaintiffs. The exact number of Class Members is unknown, though believed to be in the thousands, but can be reasonably determined from the records maintained by Champion.

29.   The named Plaintiffs are members of the Plaintiff Class described herein and will adequately represent the interests of the Class. The named Plaintiffs purchased their manufactured home from in March 1997. The manufactured home was manufactured by Redman, a wholly owned subsidiary of Champion. The manufactured home purchased by the Guidrozes contained the redhibitory defect described herein at the time of purchase. Although Redman knew of the redhibitory defect at the time of sale, Redman failed to disclose the defect to the Plaintiffs.

30.   As a result of the redhibitory defect rendering the manufactured home useless as a residence or dwelling structure, the defendants are liable unto the Guidrozes for the return of the purchase price with interest from the date of purchase, for the reimbursement of reasonable expenses occasioned by the sale and those incurred for the preservation of the manufactured home, and also for damages and reasonable attorney fees. The claims and damages arising from the redhibitory defect in the Guidroz manufactured home are typical of the Members of the Class.

31.   Alternatively, Plaintiffs allege that the purchased manufactured home was unreasonably dangerous in design, because of inadequate warnings and nonconformity to the manufacturer's express warranty in violation of the provisions of the LPLA.

32.   Despite their knowledge during the class period of Louisiana's climactic conditions, Defendants constructed their products with "living side" vapor barriers combined with wall cavities ventilated to outside air and/or ventilation systems that causes accumulation and retention of moisture in the wall materials and wall cavities, all breaches of accepted engineering practices, despite the availability of alternative designs that were economically practical for the manufacture of manufactured homes to be sold

in Louisiana. Defendants failed to use then-existing reasonably available scientific and technological knowledge to design, construct and manufacture manufactured homes that would not be subject to the excessive condensation characteristics of the defective vapor barrier, wall cavity and ventilation design and construction that proximately caused Plaintiff's damages.

33. Plaintiffs' claims for damages under the LPLA are typical of the members of the class.

34. The named Plaintiffs have no interests adverse to the interests of the other Members of the two Plaintiff Class.

35. There are numerous substantial questions of law and fact common to all of the Members of the Plaintiffs Class that will control this litigation and will predominate over any individual issues. Included within the common questions of law and fact are:

 a. Whether the design and manufacture of manufactured homes that have vapor barriers on the living side of exterior wall structures combined with wall cavities ventilated to outside air and/or ventilation systems that cause excessive accumulation of moisture in the walls' cavities and structural materials is a redhibitory defect pursuant to Louisiana Civil Code Article 2520;

 b. Whether Redman or Champion and its subsidiaries in the course of operating a single business enterprise designed and constructed manufactured homes with the redhibitory defect;

 c. Whether Redman and Champion and its subsidiaries constitute a single business enterprise for determining Champion's liability;

d.  Whether the redhibitory defect existed at the time of the sale;

e.  Whether Redman or Champion disclosed the existence of the redhibitory defect at the time of the sale;

f.  Whether the manufactured homes in question were sold in Louisiana;

g.  Whether the actions of the defendant manufacturers and the redhibitory defects caused the damages sustained by Plaintiffs;

h.  Whether the manufactured homes in question are unreasonably dangerous in design as provided in La.-R.S. 9:2800.55;

i.  Whether the manufactured homes in question are unreasonably dangerous because an adequate warning about the product has not been provided as provided in La.-R.S. 9:2800.57;

j.  Whether the manufactured homes in question are unreasonably dangerous because they do not conform to an express warranty of the manufacturer about the product as provided in La.-R.S. 9:2800.58;

k.  Whether the unreasonably dangerous characteristics of the manufactured homes existed at the time the product left the control of the defendants; and

l.  Whether the damages sustained by plaintiffs were proximately caused by the unreasonably dangerous characteristics of the manufactured homes.

## PLAINTIFFS' CAUSE OF ACTION IN REDHIBITION AGAINST DEFENDANTS

36.  Plaintiffs reiterate all factual allegations above by reference in support of their cause of action in redhibition. As a consequence of the Champion Group being the

manufacturer and seller of defective manufactured homes in redhibition, the Champion Group is liable to the Plaintiffs and the Class for the following:

    a. Return of the purchase price for the manufactured homes, together with interest from the time the purchase price was paid;

    b. Reasonable expenses occasioned by the sale;

    c. Damages caused by the use of the defective manufactured home, including but not limited to the expense incurred in attempted repairs and the cost of temporary alternative housing, but specifically excluding any personal injury; and

    d. Reasonable attorney fees.

## PLAINTIFFS' CAUSE OF ACTION UNDER THE LPLA AGAINST DEFENDANTS

37. Plaintiffs reiterate all factual allegation set forth above by reference in support of their claims for damages proximately caused by violations of the LPLA. As a consequence of the Champion Group violating the provisions of the LPLA, the Champion Group is liable unto the Plaintiff Class for all damages proximately caused by the unreasonably dangerous characteristics of the manufactured homes, namely, that the manufactured homes are unreasonably dangerous in design as provided in La.-R.S. 9:2800.55; are unreasonably dangerous because they do not conform to an express warranty of the manufacturer about the product as provided in La.-R.S. 9:2800.58; and, are unreasonably dangerous because an adequate warning about the product has not been provided as provided in La.-R.S. 9:2800.57.

38. Plaintiffs further pray for the following:

   i. That at a date and time to be set by this Honorable Court, The Court, after hearing, certify this case as a class action with the named Plaintiffs representing the interest of the Plaintiff Class;

   ii. That Plaintiffs be awarded all remedies and damages incurred as a consequence of the liability of the defendants for the manufacturing and/or selling of defective manufactured homes;

   iii. That the Court appoint Plaintiffs' undersigned counsel to represent the interests of the Plaintiff Class;

   iv. That the Court award a reasonable sum for attorneys fees, as found by the trier of fact, with additional sums for the services of counsel in the event of subsequent appeal;

   v. That the Court award post-judgment interest on the judgment at the rate provided by law from the date of judgment until paid; That the Court award all costs of these proceedings, including notice and class counsel fees; and

   vi. Such other and further relief that Plaintiffs may justly entitled.

   Respectfully submitted,

   By: /s/ Hugh E. McNeely
   Hugh E. McNeely, Esq. LSBA# 10628
   HAGENS BERMAN SOBOL SHAPIRO LLP
   One Main Street, 4th Floor
   Cambridge, Massachusetts 02142
   Telephone: 617-482-3700
   Facsimile: 617-482-3003

Gibson Vance, Esq.
Lance Gould, Esq.
Beasley, Allen, Crow, Methvin, Portis & Miles, P.C.
218 Commerce Street
Montgomery, AL 36104

Counsel for Plaintiffs