**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

**HAROLD KELLY MURPHY,**                              *
                                                      *
     **Plaintiff,**                               *
                                                      *
**vs.**                                               * **CASE NO.: 2:06-cv-618-MEF**
                                                      *
**SOUTHERN ENERGY HOMES, INC., et al.,**              *
                                                      *
     **Defendants.**                              *

## FIRST AMENDED COMPLAINT

Comes Now, Plaintiff, and substitutes this Amended Complaint for the original Complaint and states the following:

### PARTIES

1.  Plaintiff Harold Kelly Murphy is over the age of nineteen (19) and is a resident of Montgomery County, Alabama.

2.  Defendant Southern Energy Homes, Inc. ("Southern Energy") upon information and belief is an Delaware corporation with its principal place of business in Delaware, who does business by agent in Montgomery County, Alabama.

### BACKGROUND FACTS

3.  The Federal Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401, *et. seq.*, went into effect on June 15, 1976, and is commonly referred to as the "HUD Code."  In addition, there exists the Manufactured Home Construction and Safety Standards, 24 C.F.R. § 3280, *et. seq.*, (the "Standards") and the Manufactured Home Procedural and Enforcement Regulations, 24 C.F.R. § 3282, *et. seq.*, (the "Regulations.")

4.      The Standards mandate that "[a]ll construction methods shall be in conformance with accepted engineering practices to insure durable, livable and safe housing and shall demonstrate acceptable workmanship reflecting journeyman quality of work of the various trades."  24 C.F.R 3280.303(b).

5.      Defendant has known since at least the early 1990s that homes that it has manufactured and sold in the states of Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, Texas, and Louisiana are defectively designed for that region.

6.      The manufactured home designed and manufactured by Defendant and purchased by Plaintiff, has defectively designed and constructed moisture control performance, exterior walls, wall cavities, and exterior coverings and/or ventilation systems, in violation of the HUD Manufactured Home Construction and Safety Standards.  Specifically, the defective manufactured home uses a design that incorporates a vapor barrier on the "living side" of the wall structures combined with wall cavities and external coverings or sheathing and/or ventilation systems that causes moisture to accumulate and remain in the wall cavities of the manufactured home which is subject to the hot and humid climactic conditions in the Gulf Coast Region.  Defendant's construction of manufactured homes that causes moisture to condense, accumulate and remain in the walls and wall cavities does not comply with accepted engineering practices to insure durable, livable, and safe housing as set forth in HUD Standards Title 24 of the Code of Federal Regulations §§ 3208.303.  The manner in which Defendant designs and constructs their products with wall cavities ventilated to the outside ambient air and/or ventilation systems that create negative pressure conditions in the wall structures for homes in the Gulf Coast Region has led to or will lead to excessive

accumulation of vapor condensation and a contiguous moisture problem through the exterior wall structures of the manufactured homes utilizing this design. The moisture environment within the walls and wall cavities is a performance failure created by the defective design and construction and has led or will lead to premature deterioration of wall materials, warping or wakening of wall materials, development of "soft walls", and to an extreme amount of mold and fungal growth throughout the wall structure thereby creating elevated exposure to such mold and fungal growth to occupants. Because this predictable phenomenon and resulting damage occurs in the Gulf Coast states, people working in the manufactured housing industry commonly refer to this condition as "Gulf Coast Syndrome."

7.      Contrary to the mandate to build homes using "acceptable engineering practices to insure durable, livable and safe housing," the placement of a vapor barrier on the living side of the homes in the regions described herein is contrary to acceptable and fundamental engineering practices.

8.      The manufactured homes designed and manufactured by Defendant, including the manufactured home purchased by Plaintiff has an improper design and construction of the walls in violation of the Department of Housing and Urban Development's ("HUD's") Manufactured Home Construction and Safety Standards. The defect existed at the time of sale and Plaintiff was provided with a written manufacturer warranty that expressly warranted that the home was free from defect.

9.      Under applicable regulations, it is the responsibility of the manufacturer to choose from one of several options for the construction of a home, taking into consideration, among other things, the geographic location in which the home will be

placed.  To that end, the HUD Code has provided two options for home construction under 24 C.F.R. § 3280.504(b) which have never required the placement of a vapor retarder on the living side of the home.  In addition, the HUD Code provides for any innovations and/or alternatives in construction for "new designs or techniques not in compliance with the Standards … in cases … [w]here such construction would provide performance that is equivalent or superior to that required by the Standards; and … where compliance with the Standards would be unreasonable because of the circumstances of the particular case."

10.    Despite the fact that the HUD Code, the Standards, and the Regulations have never required the use of a vapor barrier on the living side of the walls in these regions, on or about March 30, 2000, the Director, Manufactured Housing and Standards Division, Office of Consumer and Regulatory Affairs, Room 9156, Department of Housing and Urban Development (hereinafter, "HUD" or "the Department") published a proposed waiver to 24 C.F.R. 3280.504 of the Manufactured Home Construction and Safety Standards (hereinafter, "the Standards") on March 30, 2000 (65 Fed. Reg. 17110). This proposed waiver applied to the first of the options in 24 USC 3280.504(b) (the only option requiring the vapor barrier /retarder be on the living side of the walls) and allowed the vapor barrier / retarder to be moved from the living side walls of the home to the outside of the home. Thus, four express options were available to the manufacturer before the "proposed waiver" was implemented in March 2000.  The waiver now creates yet another option from which the manufacturer may choose to meet "their responsibilities to use construction methods that result in 'durable, livable, and safe housing' as required by 24 CFR 3280.303(b) of the Standards."

11.     The proposed waiver was issued in response to information received from manufacturers and certain State Administrative Agencies ("SAAs") in southeastern States concerning the continuing increases in the number and severity of consumer complaints caused primarily by moisture build-up and condensation in homes located in the south. At that time, § 3280.504 of the Standards did not distinguish among climates for requirements for condensation control and installation of vapor barriers. Thus, for example, the Standards did not separately address homes placed in humid and fringe environments or climates, which are predominantly located in the southeastern part of the United States. In these climates, it was determined that it may be beneficial to prevent the outside, moisture-laden air from entering through the warm (exterior) side of the home's exterior wall and condensing and collecting on the cold (living space or interior) side of the wall assembly. One means of preventing moisture from entering the exterior wall cavity from the outside would be to install a vapor retarder on the warm or exterior side of the wall instead of on the interior or living space side of the exterior wall.

12.     The interior surface of the exterior wall should also be constructed of a permeable material. This would permit any moisture-laden air that may have entered the wall cavity through a discontinuity in the exterior vapor retarder to be dissipated through the interior permeable material. In such cases, use of vapor retarder paints, vinyl-covered gypsum wallboard, or other impermeable materials or finishes on the interior side of exterior walls could be detrimental, because they would trap moisture within the wall.

13.     HUD in fact issued a waiver that applied to the first of the alternatives available under § 3280.504(b), the then current condensation control and vapor barrier installation requirements for exterior walls in humid and fringe climates. Specifically,

this waiver allowed manufacturers of homes for humid and fringe climates to install the vapor retarder on the exterior side, rather than the interior or living space side, of the exterior wall, provided:  (1) The exterior side of the exterior wall is constructed with a vapor retarder or exterior covering and sheathing that has a permeance not greater than 1.0 perm; and (2) the interior finish and interior wall panels are designed with a 5 perm or higher rating.  The waiver also required manufacturers to add a statement and a map to the data plate indicating that the home is only suitable for installation in humid and fringe climates (the map designated the acceptable locations for which the waiver is applicable).

14.    The waiver that was urged by many manufacturers in the industry and approved by HUD stated**:**

> **§ 3280.504 Condensation control and installation of vapor retarders:**
>
> **\*\*\***
>
> (4) Homes manufactured to be sited in "humid climates" or "fringe climates" as shown on the Humid and Fringe Climate Map in this paragraph shall be permitted to have a vapor retarder specified in paragraph (b)(1) of this section installed on the exterior side of the wall insulation or be constructed with an external covering and sheathing with a combined permeance of not greater than 1.0 perm, provided the interior finish and interior wall panel materials have a combined permeance of not less than 5.0 perm.

15.    The Humid and Fringe Climate Map stated that "following areas of local governments (counties or similar areas, unless otherwise specified), listed by State are deemed to be within the humid and fringe climate areas shown on the Humid and Fringe Climate Map in paragraph (b)(4) of this section, and the vapor retarder specified in paragraph (b)(4) of this section may be applied to homes built to be sited within these jurisdictions"**:**

**Alabama:** Baldwin, Barbour, Bullock, Bulter, Chootaw, Clarke, Coffee, Conecuh, Covington, Crenshaw, Dale, Escambia, Geneva, Henry, Houston, Lowndes, Marengo, Mobile, Monroe, Montgomery, Pike, Washington, Wilcox.

**Florida:** All counties and locations within the State of Florida.

**Georgia:** Appling, Atkinson, Bacon, Baker, Ben Hill, Berrien, Brantley, Brooks, Bryan, Calhoun, Camden, Charlton, Chatham, Clay, Clinch, Coffee, Colquitt, Cook, Crisp, Decatur, Dougherty, Early, Echols, Effingham, Evans, Glynn, Wayne, Grady, Irwin, Jeff Davis, Lanier, Lee, Liberty, Long, Lowndes, McIntosh, Miller, Mitchell, Pierce, Quitman, Randolph, Seminole, Tattnall, Terrell, Thomas, Tift, Turner, Ware, Worth.

**Louisiana:** All counties and locations within the State of Louisiana.

**Mississippi:**

Adams, Amite, Clairbourne, Clarke, Copiah, Covington, Forrest, Franklin, George, Greene, Hancock, Harrison, Hinds, Issaquena, Jackson, Jasper, Jefferson, Jefferson Davis, Jones, Lamar, Lawrence, Lincoln, Pearl River, Perry, Pike, Rankin, Simpson, Smith, Stone, Walthall, Warren, Wayne, Wilkinson.

**North Carolina:** Brunswick, Carteret, Columbus, New Hanover, Onslow, Pender.

**South Carolina:**

Jasper, Beaufort, Colleton, Dorchester, Charleston, Berkeley, Georgetown, Horry.

**Texas** Anderson, Angelina, Aransas, Atacosa, Austin, Bastrop, Bee, Bexar, Brazoria, Brazos, Brooks, Burleson, Caldwell, Calhoun, Cameron, Camp, Cass, Chambers, Cherokee, Colorado, Comal, De Witt, Dimmit, Duval, Falls, Fayette, Fort Bend, Franklin, Freestone, Frio, Gavelston, Goliad, Gonzales, Gregg, Grimes, Guadalupe, Hardin, Harris, Harrison, Hays, Henderson, Hidalgo, Hopkins, Houston, Jackson, Jasper, Jefferson, Jim Hogg, Jim Wells, Karnes, Kaufman, Kennedy, Kinney, Kleberg, La Salle, Lavaca, Lee, Leon, Liberty, Limestone, Live Oak, Madison, Marion, Matagorda, Maverick, McMullen, Medina, Milam, Montgomery, Morris, Nacogdoches, Navarro, Newton, Nueces, Orange, Panola, Polk, Rains, Refugion, Robertson, Rusk, Sabine, San Augustine, San Jacinto, San Patricio, Shelby, Smith, Starr, Titus, Travis, Trinity, Tyler, Upshur, Uvalde, Val Verde, Van Zandt, Victoria, Walker, Waller, Washington, Webb, Wharton, Willacy, Williamson, Wilson, Wood, Zapata, Zavala.

These respective Counties shall be referred to as the "Gulf Coast Region."

16.     As the acting Director of Product Engineering for Fleetwood Homes stated in commenting to HUD on the proposed waiver:

> [t]o be able to put the vapor barrier on the exterior side (warm side) of the wall in hot, humid climates is very necessary to properly handle potential moisture problems… [w]ithout these exceptions the vapor barrier will remain on the inside in the hot, humid climate and moisture will be trapped in the home."

(Comments by William Farish, P.E. in a letter dated January 17, 2005, to the HUD).

17.    Despite lobbying for and obtaining the waiver, Defendant failed to take advantage of the waiver HUD agreed was required. Defendant disingenuously alleges that it is impracticable to comply with the waiver.  Again, as alleged, even prior to the waiver, there were other options available which did not require a vapor retarder on the living side of the walls, and an unlimited alternative construction provision that allowed manufacturers to meet the federal mandate of safe and durable housing through innovative construction designs and methods.  Upon information and belief, Defendant chose to ignore these other options because the location of a vapor retarder on the living side of the walls was beneficial in the majority of the locations in which Defendant sold their homes, and changing the design for a minority of homebuyers would impact Defendant's profits.  The result was that Defendant sold a product in the Gulf Coast Region that is defective for that geographic region.  Regardless, Defendant chose to sell homes to consumers in the Gulf Coast Region without informing them of this known defect and thus chose profit over conscience.

18.    However, if Defendant chooses to utilize option 1 of 24 CFR 3280.504(b) and place a vapor barrier on the 'living side' of the exterior walls, it still has a duty to take steps to ensure that option 1 is implemented correctly by ensuring the home performs in the manner prescribed in, among other things, sections 3280.103(b) (ventilation system 'shall not create a negative air pressure…') and/or 3280.504 ('Condensation control and installation of vapor retarders') and/or 3280.505 ('The opaque envelope shall be designed and constructed to limit air infiltration to the living area of the home.   Any design, material, method or combination thereof which

accomplishes this goal may be used') and/or 3280.303(b) ('All construction methods shall be in conformance with accepted engineering practices…').

19.    Any and all complaints to Defendant have resulted in inadequate relief and despite a reasonable opportunity and repeated complaints by countless individuals, Defendant merely at most offers to replace the gypsum wallboard on occasion. This does not remedy the cause of the problem as the new gypsum wallboard will deteriorate in the same manner as the replaced gypsum wallboard did. Defendant never informs the consumer of the known defect and fail to offer a full refund of the purchase price.

20.    The manufactured home that Defendant sold to Plaintiff was a dangerous product when manufactured and provided for sale in the Gulf Coast Region. As Defendant knew, the home created a substantial risk of excessive moisture and therefore created an extreme risk of mold growth and structural damage. This in turn created an unreasonable and serious risk of personal injury or death to Plaintiff, other residents of the home, and visitors to the home.

21.    Defendant warranted to Plaintiff that the manufactured home was free from defects in materials and/or workmanship, and Plaintiff had a reasonable expectation that his manufactured home would have proper construction appropriate for the region in which the manufactured home was sold. Defendant also promised expressly or as a matter of law impliedly to comply with all applicable building codes, including the HUD Code, Standards, and Regulations.

22.    The presence of the defect, which was negligently or fraudulently concealed by the Defendant, was material to the transaction because Plaintiff would not

have purchased the manufactured home if told that the manufactured home was defective for use with the Gulf Coast Region.

23.     Defendant manufactured a manufactured home, which the Plaintiff purchased on or about December 26, 2003. The purchase price of the home was $45,639.90.

24.     As part of the purchase price Defendant made a written express warranty to the Plaintiff.  Defendant further warranted that any defects in the materials or workmanship in the home, which they were given notice of within the warranty period, would be repaired or remedied at no cost to the Plaintiff.

25.     The manufactured home manufactured by Defendant failed to perform, failed to serve as a suitable place or residence, and failed in its intended purpose.

26.     Subsequent to the failure of the manufactured home and notice by the Plaintiff to Defendant of such failure, Defendant has failed to effectuate any repair to the manufactured home.   As such, the manufactured home continues to deteriorate structurally.

27.     Defendant has failed to honor the warranty or repair in that the manufactured home purchased was not fit for its intended use, was not merchantable at the date of the purchase and has continued to not be fit for its particular purpose, not withstanding efforts to repair the structure by Defendant.

28.     Pursuant to Code of Alabama, 1975 § 7-2-607(3), Plaintiff has given the Defendant notice of Plaintiff's breach of warranty claim prior to bringing this suit.

29.     Defendant had a duty to disclose the known defect to Plaintiff and they failed to do so, to Plaintiff's detriment. Based on Defendant's failure to disclose these material facts, Plaintiff agreed to purchase the manufactured home.

30.     Plaintiff discovered the fraudulent concealment within two (2) years of filing this lawsuit.

31.     Defendant entered into a pattern or practice of fraudulent conduct that included the fraud practiced on Plaintiff.

32.     At all times material hereto, Plaintiff depended on Defendant to advise Plaintiff as to quality and design of the manufactured home. Defendant had superior knowledge and bargaining power over Plaintiff.

33.     The conduct by Defendant was intentional, gross, wanton, malicious and/or oppressive.

## COUNT ONE
## MAGNUSON MOSS WARRANTY ACT
### 15 U.S.C. § 2301, et seq.

34.     Plaintiff incorporates by reference all of the preceding paragraphs.

35.     At the time of the manufacture, Defendant was a merchant, Defendant expressly and/or impliedly warranted that the manufactured home would be merchantable and/or fit for the ordinary purposes for which it was to be used and did expressly warrant that the manufactured home was expressly fit, designed, and built as directed by Plaintiff, and that the manufactured home was free from defects in materials and workmanship or any defects would be repaired or replaced under the warranty.

36.     The manufactured home, as delivered, was not free from defects in materials or workmanship.

37.    Defendant has failed or refused to correct the defects in the manufactured home and/or the warranty has failed in its essential purpose causing Plaintiff to suffer injury and damages.

38.    As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been proximately damaged as follows: the defects in the manufactured home have substantially and severely impaired its use; the home is of decreased or lesser value than represented when purchased; Plaintiff has suffered mental anguish and emotional distress, anxiety, embarrassment, anger, fear, frustration, disappointment, worry, annoyance, inconvenience; and Plaintiff has been subject to toxic mold resulting from the defects and has suffered pain and discomfort.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, and costs, as well as reasonable attorney fees as allowed under 15 U.S.C. § 2301, et seq.

## COUNT TWO
## BREACH OF EXPRESS WARRANTY

39.    Plaintiff incorporates by reference all of the preceding paragraphs.

40.    Defendant expressly warranted that the manufactured home would be merchantable and/or fit for the ordinary purposes for which it was to be used and did expressly warrant that the manufactured home was expressly fit, designed, and built as directed by Plaintiff, and that the manufactured home was free from defects in materials and workmanship or any defects would be repaired or replaced under the warranty.

41.    The manufactured home, as delivered, was not free from defects in materials or workmanship.

42.     Defendant has failed or refused to correct the defects in the manufactured home and/or the warranty has failed in its essential purpose causing Plaintiff to suffer injury and damages.

43.     As a direct and proximate result of Defendant's wrongful conduct, Plaintiff has been proximately damaged as set forth in Paragraph 38.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, and costs, as well as reasonable attorney fees.

**COUNT THREE**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**

44.     Plaintiff incorporates by reference all of the preceding paragraphs.

45.     Defendant breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

46.     Plaintiff provided notice to Defendant for the breach of implied warranty and has given Defendant opportunity to cure or attempt to cure the numerous defects, but Defendant has failed or refused to do so.

47.     As a direct result of the breach of implied warranty or merchantability by Defendant, Plaintiff was damaged as set forth in Paragraph 38.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, and costs, as well as reasonable attorney fees.

## COUNT FOUR
## BREACH OF FITNESS FOR PARTICULAR PURPOSE

48.     Plaintiff incorporates by reference all of the preceding paragraphs.

49.     Defendant breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

50.     Plaintiff provided notice to Defendant for the breach of fitness for particular purpose and has given Defendant opportunity to cure or attempt to cure the numerous defects, but Defendant has failed or refused to do so.

51.     As a direct result of the breach of fitness for particular purpose by Defendant, Plaintiff was damaged as set forth in Paragraph 38.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, and costs, as well as reasonable attorney fees.

## COUNT FIVE
## BREACH OF WARRANTY OF HABITABILITY

52.     Plaintiff incorporates by reference all of the preceding paragraphs.

53.     Defendant breached the implied warranty in that the manufactured home was not merchantable, was not fit for ordinary purposes, and was not built as represented or ordered.

54.     Plaintiff provided notice to Defendant for the breach of warranty of habitability and has given Defendant opportunity to cure or attempt to cure the numerous defects, but Defendant has failed or refused to do so.

55.    As a direct result of the breach of warranty of habitability by Defendant, Plaintiff was damaged as set forth in Paragraph 38.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, and costs, as well as reasonable attorney fees.

## COUNT SIX
## NEGLIGENCE

56.    Plaintiff incorporates by reference all of the preceding paragraphs.

57.    Defendant negligently manufactured, designed, built, and/or assembled the manufactured home which the Plaintiff purchased from Defendant.

58.    Defendant owed a duty to use due and ordinary care in the manufacture, design, building, and/or assembly of the manufactured home purchased by the Plaintiff.

59.    Defendant breached the duty owed to the Plaintiff by failing to use ordinary and due care in the manufacture, design, building, and/or assembly of the manufactured home which was purchased by the Plaintiff.

60.    As a direct and proximate result of the Defendant's negligence, Plaintiff was damaged as set forth in Paragraph 38.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, and costs, as well as reasonable attorney fees.

## COUNT SEVEN
## WANTON

61.    Plaintiff incorporates by reference all of the preceding paragraphs.

62.     Plaintiff alleges Defendant is guilty of wanton construction of the manufactured home.

63.     The workmanship and design are inferior, wantonly performed or done, leaving the manufactured home in a defective condition, thereby causing injury to the Plaintiff.

64.     As a direct and proximate result of the Defendant's wantonness, Plaintiff was damaged as set forth in Paragraph 38.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and costs, as well as reasonable attorney fees.

## COUNT EIGHT
## UNJUST ENRICHMENT

65.     Plaintiff incorporates by reference all of the proceeding paragraphs.

66.     Defendant, by its acts and omissions described herein, has wrongfully appropriated, retained or otherwise possessed funds that rightfully in justice and equity belong to Plaintiff.  Defendant has earned enormous profits from this deceptive act.

67.     Defendant should be required to disgorge all sums (e.g. the money earned from this practice) received from Plaintiff as a result of the illegal and improper manner in which Defendant placed for use by consumers a product (the Plaintiff's home) into a region in which Defendant knew the home would become worthless.  Plaintiff is also entitled to pre-judgment interest.

## COUNT NINE
## FRAUDULENT CONCEALMENT

68.     Plaintiff incorporates by reference all of the preceding paragraphs.

69.     Defendant failed to disclose the known defect (as set forth in the Background Facts) of the manufactured home to Plaintiff in connection with the purchasing of the manufactured home.

70.     The fraudulent concealment and omissions by Defendant was known and deliberate and was purposely designed to deceive Plaintiff.

71.     The concealment and omissions by Defendant was material in that Plaintiff would not have purchased the manufactured home absent the concealment and omissions of material facts by Defendant. Plaintiff reasonably believed that Defendant had accurately and adequately disclosed all material facts.

72.     As a direct and proximate result of Defendant's fraudulent concealment and omissions, Plaintiff was damaged as set forth in Paragraph 38.

73.     Defendant's fraudulent conduct was willful, wanton, and malicious, thereby entitling Plaintiff to the recover an amount to be determined at the trial of this action.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and cost, as well as reasonable attorney fees.

## COUNT TEN
## NEGLIGENT/WANTON FRAUDULENT CONCEALMENT

74.     Plaintiff incorporates by reference all of the proceeding paragraphs.

75.     Defendant negligently and/or wantonly fraudulently failed to disclose material facts to Plaintiff.

76.     Said action was a breach of the duty owed to Plaintiff.

77.    As a proximate consequence of said actions, Plaintiff was damaged as set forth in Paragraph 38.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and cost, as well as reasonable attorney fees.

## COUNT ELEVEN
## ALABAMA EXTENDED MANUFACTURERS LIABILITY DOCTRINE

78.    Plaintiff incorporates by reference all of the preceding paragraphs.

79.    Defendant was involved in the manufacture of a manufactured home, specifically, serial number DSDAL38810AB.

80.    Defendant manufactured the manufactured home and placed it in the stream of commerce where Plaintiff ultimately purchased the manufactured home on or about December 26, 2003.

81.    The manufactured home reached the Plaintiff as the ultimate users or consumers without any substantial change in its condition from the time it was manufactured by Defendant.

82.    Plaintiff used the manufactured home for its intended purpose, as a residence.

83.    The manufactured home, when it reached the Plaintiff, was in a defective condition and/or in a condition that was unreasonably dangerous to the Plaintiff as the ultimate users or consumers.

84.    As a direct and proximate result of Defendant placing a defective and/or unreasonably dangerous manufactured home in the stream of commerce, Plaintiff was damaged as set forth in Paragraph 38.

WHEREFORE, Plaintiff demands judgment against the Defendant in such an amount of compensatory damages as deemed appropriate, a separate amount as punitive damages, and costs, as well as reasonable attorney fees.

/s/ C. Lance Gould
C. LANCE GOULD (ASB-0913-G66C)
Attorney for Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,**
**METHVIN, PORTIS & MILES, P.C.**
Attorneys at Law
Post Office Box 4160
Montgomery, AL  36103-4160
(334) 269-2343
(334) 954-7555 (fax)

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that I have electronically filed the original of the foregoing document in this Court and served a copy upon all Defendants of record <u>as listed below</u> by placing a copy of same in the United States Mail, first class, postage prepaid on this the 25th day of May, 2007.

/s/ C. Lance Gould
OF COUNSEL

W. Scott Simpson
RITCHEY & SIMPSON, PLLC
3288 Morgan Drive, Suite 100
Birmingham, Alabama 35216
Telephone: (205) 822-3422
Facsimile: (205) 822-3618
e-mail: wssimpson@bellsouth.net

Lee E. Bains, Jr.
Thomas W. Thagard, III
Edward S. Sledge IV
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000 (Telephone)
(205) 254-1999 (Facsimile)
lbains@maynardcooper.com
tthagard@maynardcooper.com
sledge@maynardcooper.com