IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| HAROLD KELLY MURPHY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Case No.: 2:06-cv-618-MEF |
| | ) |
| SOUTHERN ENERGY HOMES, INC., | ) |
| et al., | ) |
| | ) |
|     Defendants. | ) |

**REPLY BRIEF IN SUPPORT OF
MOTION FOR JUDGMENT ON THE PLEADINGS**

COMES NOW the Defendant, Southern Energy Homes, Inc. ("Southern"), and submits the following Reply Brief in Support of its Motion for Judgment on the Pleadings.

**I. Introduction.**

The plaintiff, Harold Kelly Murphy ("Murphy"), advances five principal arguments in support of his opposition to Southern's Motion for Judgment on the Pleadings.

Murphy contends that a recent development in a nearly identical case, *Guidroz v. Champion Enterprises, Inc.*, which is pending in the Federal District Court for the Western District of Louisiana, undermines Southern's argument that all of Murphy's claims are preempted under federal law. Murphy represents that after the *Guidroz* court dismissed the Louisiana case based on preemption grounds,[1] that the court granted

---

[1] Southern supplied this court with a copy of the Guidroz court order, dismissing a class complaint on preemption grounds, with its Brief in Support of Motion for Judgment on the Pleadings.

plaintiffs leave[2] to amend the complaint because "if [the Judge] truly believed that the Complaint as *Amended* was still preempted he would not waste his time allowing the amendment." (*See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Judgment on the Pleadings (referred to hereafter as "Murphy's Opposition"), p.23) Murphy's position is nothing more than an exercise in wishful thinking. As Southern will demonstrate below, the *Guidroz* court reaffirmed its position on federal preemption, holding that all of the plaintiffs' original claims are preempted and that any amendment incorporating such claims would likewise be preempted.

Murphy contends that Southern's selection of a wallboard design under 24 C.F.R. § 3280.504(b)(1) (interior vapor barrier) violates a general provision of the HUD Code set forth at 24 C.F.R. § 3280.303(b). Respectfully, Murphy misapprehends the rules of regulatory construction, as a general provision of the HUD Code cannot be invoked to overcome a specific provision. Moreover, HUD recently reviewed this novel legal theory and firmly rejected it through an informal opinion letter.

Next, Murphy relies on a handful of legal decisions from other jurisdictions in support of his position that his claims are not preempted. Murphy conveniently overlooks the only decision directly on point – *Guidroz* – which held that wallboard claims attacking the use of interior vapor barriers under the HUD Code are preempted by federal law. This court should not be persuaded by the other cases cited by Murphy, as they are factually and legally distinguishable from the instant case.

Murphy also urges this Court to reject Southern's "field preemption" argument. This Court need not waste its time on this issue, as Southern firmly conceded that this is

---

[2] Plaintiff's counsel in Murphy also represents the plaintiffs in the *Guidroz* action.

not a field preemption case. (*See* Southern's Brief in Support of Motion for Judgment on the Pleadings, p. 7, n.9)

Finally, Murphy argues that Section 3280.504(b) is a "performance code" and that Southern can be held liable for not selecting what Murphy contends is the "best" choice on a list of approved HUD code design options. The *Guidroz* court soundly rejected this argument, relying on analogous United States Supreme Court precedent, *Geier v. American Honda Motor Corp., Inc.*, 529 U.S. 861 (2000). Furthermore, HUD purposely chose *not to* impose a geographical limitation on the use of interior vapor barrier designs because HUD approves of that design everywhere in the United States. Murphy's attempt to undermine that position through a lawsuit is a direct attack on the HUD Code, which is foreclosed by federal preemption doctrine.

## II. The *Guidroz* Court Reaffirmed its Holding that Wallboard Claims are Preempted.

In *Guidroz*, after issuing a thorough 29-page order dismissing plaintiffs' wallboard claims with prejudice (the same claims presented here), the court, months later, granted plaintiffs leave to amend their complaint in order to plead a new theory of recovery, which might survive a preemption attack. Murphy contends that the court's decision to permit an amendment is a signal that the preemption defense is flawed. Murphy's characterization of the court's order is incorrect. A transcript of the hearing on Plaintiffs' Motion to Amend in *Guidroz* (*See* Exhibit A) makes it overwhelmingly clear that the court has not reconsidered its decision on the preemption issue. In fact, the court affirmed that its original decision was, and is, correct: plaintiffs' wallboard theory is indeed preempted by federal law. The court entered an order allowing an amendment,

simply because the court promised plaintiffs' counsel the opportunity to do so in a prior hearing. (*See* Court Order, attached hereto as Exhibit B)  During the hearing, the court again held that plaintiffs' wallboard theory is preempted and any amendment incorporating similar allegations would likewise be preempted:

> THE COURT: So I apologize to you. I apologize for forgetting about you, for forgetting about what I told you. **I don't apologize for the opinion, which I happen to think was right**, but I do apologize for not allowing you your opportunity to amend which I told you I was going to do. I have no excuse for that.
> This was an opinion that Janet and I agonized over for a long time. It's a hard case and it was a hard opinion to write. She and I don't normally agonize. We usually argue. In this one we agonized.
> **I believe the conclusion I reached was the correct one under the circumstances, but it was the passage of that time in trying to get the opinion right that it just simply slipped my mind what I had told you I was going to allow you to do.**

Exhibit A, p. 2:18-3:6. (emphasis added).

> THE COURT: … The claim that you pled in the initial complaint I believe it to be peremptory.
> We'll see if the amending complaint gets you past that, **but to the extent that the amending complaint incorporates those allegations found in the original complaint, I believe that is preempted and that's why I'm going to make it a partial dismissal.** That's the intent of what I'm trying to get done, and then we'll take a look at – we'll take a look at the amended pleading after that.

Exhibit A, p. 4:7-16. (emphasis added).

The Defendants in *Guidroz* are scheduled to file a second motion to dismiss tomorrow attacking the plaintiffs' new theory of recovery – that some unidentified aspect of manufactured home ventilation systems (i.e., furnaces and/or air conditioners) is defective.  Importantly, Murphy just filed a motion for leave to file an identical amendment.  Murphy's filing underscores the weakness of his position:  if Murphy's wallboard claims are not preempted, then why is he seeking leave to swap to a new legal

4

theory in mid-stream? The question answers itself. Southern intends to oppose the amendment for a variety of reasons, including the fact that the amendment is untimely, as well as preempted.

### III. Murphy Misapprehends the Relationship Between Sections 3280.504(b) and 3280.303(b).

Murphy incorrectly contends that Southern's selection of an interior vapor barrier design under Section 3280.504(b)(1) of the HUD Code violates another, more general HUD Code provision, set forth at Section 3280.303(b), which states in pertinent part:

> All construction methods shall be in conformance with accepted engineering practices to insure durable, livable and safe housing and shall demonstrate acceptable workmanship reflecting journeyman quality of work of the various trades.

24 C.F.R. § 3280.303(b).

Murphy is attempting to improperly cannibalize one *specific* HUD Code provision (3280.504(b)) with a *general* provision (3280.303(b)), which runs afoul of controlling rules of regulatory construction.

The *Guidroz* court recently rejected this very argument. Applying rules of statutory construction, the court held that a general regulation cannot be used to control a specific regulation that is "tailor made for" the facts of the case. (*Guidroz*, pp. 17-18). The outcome should be the same here, as controlling law in this Circuit provides that general code provisions cannot be utilized to supersede specific ones. *Tug Allie-B, Inc.* v. *United States*, 273 F.3d 936, 948 (11th Cir. 2001). Furthermore, a court is duty bound to harmonize regulations whenever possible, since regulations are due to be enforced in accordance with their plain meaning. *McClenney v. United Air Lines, Inc.*, 178 F. Supp.

5

372, 375 (W.D. Mo. 1959); *Tierdael Constr. Co. v. Occupational Safety and Health Review Comm.*, 340 F.3d 1110, 1114 (10th Cir. 2003).

Not surprisingly, the wallboard cases in the southeast have captured the attention of HUD itself, and HUD has taken the position that plaintiffs' Section 3280.303(b) argument is flawed. HUD's Associate Deputy Assistant Secretary for Regulatory Affairs and Manufactured Housing, William W. Matchneer III, recently wrote:

> Following up on our December meeting with you and your colleagues, we have had a chance to review the plaintiffs' pleadings you have provided us on various vapor barrier cases. As the HUD official responsible for the enforcement of the Manufactured Home Construction and Safety Standards, I can say that these pleadings consistently misrepresent HUD enforcement policy by arguing that HUD's general standard at 3280.303(b) should be applied to manufacturers' practices regarding the placement of vapor barriers even though these manufacturers have complied with HUD's more specific vapor barrier standard at 3280.504(b).
>
> Consistent with basic principles of administrative law, it is HUD's practice to hold manufacturers accountable for compliance with the standard that most specifically applies to a particular aspect of construction. Accordingly, there is no case in which HUD has applied 3280.303(b) to a manufacturer that has complied with 3280.504(b).
>
> Thank you again for bringing this situation to our attention. HUD has a distinct interest in maintaining an accurate understanding by arbitrators and the courts of HUD's enforcement policies and practices regarding the Manufactured Home Construction and Safety Standards. We would be especially concerned by a reported judicial decision that misstated HUD policy and practice, so please keep us advised of developments in these cases.

(*See* HUD letter attached hereto as Exhibit C).

Agency interpretations, such as this one, should be given deference, as courts have recognized that the agency that crafts a regulation is in a superior position to understand its own rules. *See Secretary of the Interior v. Tallman*, 380 U.S. 1, 16 (1965); *see also Christensen v. Harris County*, 529 U.S. 576, 578 (2000)(*quoting Skidmore v.*

6

*Swift & Co.*, 323 U.S. 134 (1944)(agency opinion letters are "entitled to respect" to the extent they "have the power to persuade") )(internal quotations omitted).

Accordingly, this Court should hold that the general regulation of Section 3280.303(b) does not overcome or displace the wallboard design option set forth at Section 3280.504(b), and dismiss Murphy's claims with prejudice.

**IV. Murphy's Case Law is Not Persuasive.**

Murphy argues that other case law supports a finding of no preemption. The cases cited by Murphy are factually and legally distinguishable and, in many respects, supportive of Southern's position. Furthermore, Murphy offers no reasoning to overcome the opinion in *Guidroz*, choosing instead to mischaracterize the outcome of plaintiffs' motion to amend the judgment, which again dismissed the wallboard claims with prejudice based on the preemption doctrine (see argument in Section II, *supra*). The cases cited by Murphy are discussed below.

Murphy cites *Bott v. Sterling Homes, Inc.*, 527 So. 2d 548 (La. Ct. App. 1988) in support of his position that his wallboards aims are not preempted. In *Bott*, the Louisiana Third Circuit Court of Appeals affirmed the judgment of a trial court that awarded damages to a mobile home purchaser who made a redhibition claim based on numerous, severe water leaks. *Id.* at 549-50. The manufacturer argued that the plaintiff's claims failed because the home was HUD Code compliant *when it left the factory*. Applying a Louisiana statute that requires courts to apply the standard of care set forth in the HUD Code, the Court of Appeals held that HUD Code violations *in the field* could serve as a basis for liability. *Id.* at 549-50. *Bott* does not help Murphy; in fact, it undermines his

7

position.  In *Bott*, the court applied the HUD Code; whereas Murphy argues the inverse, that compliance with Section 3280.504(b)(1) actually creates liability.

*Richardson v. Fleetwood Enterprises, Inc.*, 4 F. Supp.2d 650 (E.D. Tex 1998) also offers no help to Murphy's argument because *Richardson* addressed the argument of whether the HUD Code preempts all causes of action.  The court held that violations of the HUD Code can serve as the basis for common law liability.  *Id.* at 657.  Murphy's case is different because he urges this court to hold Southern liable in warranty and tort *because* it followed a HUD Code provision with which Murphy disagrees.  Murphy cannot cite this court to any decisional law or statute that permits a plaintiff to create a theory of recovery predicated on *compliance with* federal law, since controlling precedent compels the opposite conclusion.  *Irving v. Mazda Motor Corp.*, 136 F.3d 764, 769 (11th Cir. 1998)("a state cannot impose common law damages on individuals for doing what a federal act or regulation 'authorized them to do'").  Accordingly, *Richardson* offers no helpful analysis.

Murphy cites this Court to *Shorter v. Champion Home Builders Co.*, 776 F. Supp. 333 (N.D. Ohio), where the court held that the HUD Code preempts common law standards but not common law claims.  Again, this is inapplicable.  Some common law claims may be preserved, but not if they are predicated on standards that seek to re-write the HUD Code.

Murphy cites this Court to *Choate v. Champion Home Builders Co.*, 222 F.3d 788 (10th Cir. 2000).  *Choate* is a housing case involving a manufacturer's alleged failure to install battery powered smoke detectors.  *Id*. at 790-91.  The court held that the plaintiffs' tort claims were not preempted where the HUD Code required a hard-wired smoke

detector and the plaintiffs advocated a local standard requiring battery powered detectors. *Id*. at 797. The evidence showed that the manufacturer built this particular model of home two different ways – under the HUD Code and the local building code. *Id.* at 791 n.3. In homes built under the local code, the manufacturer used battery backed-up detectors; in HUD Code homes, the manufacturer used only electrically-wired detectors. *Id.* The court reversed the lower court's entry of summary judgment holding that plaintiffs' theory of recovery was not preempted. *Id.* at 797.

*Choate* is distinguishable because there, the court addressed a section of the HUD Code which is performance based. The *Guidroz* court has determined that Section 3280.504(b) is *not* performance based; therefore, non-identical standards are not permitted, and Choate is inapplicable. Guidroz, pp. 24-5.

Lastly, Murphy relies on an Alabama Supreme Court decision, *Turner v. PFS Corp.*, 674 So. 2d 60 (Ala. 1995). *Turner* offers no help to Murphy because it holds that the violation of a federal standard can create tort liability; whereas a tort claim that seeks to impose a standard of care different than the HUD Code is expressly preempted. *Id*. at 62-3. This decision captures our point exactly. Murphy is not arguing that Southern violated the provisions of Section 3280.504(b), by selecting an unapproved wall design. Instead, he argues that Southern violated the general dictates of Section 3280.303(b) by incorporating a design option expressly permitted in Section 3280.504(b)(1). Essentially, Murphy is crafting his own version of the HUD Code by simultaneously declaring Section 3280.504(b)(1) to be retrospectively invalid, and then seeking to hold Southern liable for violating "Murphy's new law." Respectfully, Murphy's interpretation must be rejected because the law does not allow a litigant to invalidate a formal regulation,

9

enacted in accordance with federal law, simply by urging incongruity with another regulation. Similarly, the United States Supreme Court has held that courts should not second-guess the policy choices of administrative agencies acting within their statutory mandate:

> When a challenge to an agency construction of a statutory provision, fairly conceptualized, really centers on the wisdom of the agency's policy, rather than whether it is a reasonable choice within a gap left open by Congress, the challenge must fail. In such a case, federal judges – who have no constituency – have a duty to respect legitimate policy choices made by those who do. The responsibilities for assessing the wisdom of such policy choices and resolving the struggle between competing views of the public interest are not judicial ones: "Our Constitution vests such responsibilities in the political branches."

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)(*quoting TVA v. Hill*, 437 U.S. 153, 195 (1978)).

Indeed, the HUD Code should not be blithely set aside in this case simply because one litigant (Murphy) desires that outcome. HUD's policy choices with respect to wallboard design were made in keeping with federal administrative law in order to ensure that the public is properly protected and the correct outcome is reached. A brief discussion of the processes involved demonstrates this point.

Congress enacted comprehensive manufactured home legislation (the National Manufactured Housing Construction and Safety Standards Act of 1974, 42 U.S.C. 5401 et seq. (the "MHCSSA")), in order to regulate construction and safety standards for manufactured homes. Congress delegated rule-making authority to HUD, and ordered HUD to promulgate construction standards consistent with the purposes of the MHCSSA. 42 U.S.C. § 5403. There are a variety of stated purposes in the MHCSSA. Some relate to safety, while others emphasize uniformity of construction techniques and cost savings:

(b) Purposes. The purposes of this title are--

>  (1) to protect the quality, durability, safety, and affordability of manufactured homes;
>  (2) to facilitate the availability of affordable manufactured homes and to increase homeownership for all Americans;
>  (3) to provide for the establishment of practical, uniform, and, to the extent possible, performance-based Federal construction standards for manufactured homes;
>  (4) to encourage innovative and cost-effective construction techniques for manufactured homes;
>  (5) to protect residents of manufactured homes with respect to personal injuries and the amount of insurance costs and property damages in manufactured housing, consistent with the other purposes of this section;
>  (6) to establish a balanced consensus process for the development, revision, and interpretation of Federal construction and safety standards for manufactured homes and related regulations for the enforcement of such standards;
>  (7) to ensure uniform and effective enforcement of Federal construction and safety standards for manufactured homes; and
>  (8) to ensure that the public interest in, and need for, affordable manufactured housing is duly considered in all determinations relating to the Federal standards and their enforcement.

42 U.S.C. § 5401.

Consistent with the purposes of the MHCSSA, HUD promulgated the HUD Code 1975, which regulates virtually every aspect of manufactured housing construction. 24 C.F.R. § 3280 and § 3282. Unlike conventional building codes, the HUD Code is promulgated through formal rule-making procedures under the Federal Administrative Procedure Act, 5 U.S.C. § 501 et seq. HUD balances the policy goals of the MHCSSA, and promulgates rules that best meet Congress' intent with respect to construction standards. There are additional safeguards built into the regulatory process, as federal statutory law creates a standing consensus committee, which must approve of proposed changes to the HUD Code before the Secretary of HUD publishes a proposed rule in the Federal Register. 42 U.S.C. § 5403(a)(4)-(6). In short, Congress has crafted a thorough regulatory scheme to ensure that the right regulations are enacted, and that such regulations are not modified until considerable deliberation and debate has taken place,

11

including the receipt of public comments solicited through the Federal Register. The Murphy case, which involves one homeowner's point of view, is not the proper forum to launch a repeal of HUD's wallboard design regulations, which have been in place since 1975. For these reasons, Southern urges this Court to reject Murphy's arguments and dismiss this action with prejudice.

### V. Section 3280.504(b) is not a "Performance Based" Standard that Implies a Duty to Choose One Federal Option Over Any Other.

Murphy argues that Section 3280.504(b) is "performance based" standard that requires manufacturers to select the "best" choice from among the federally prescribed options set forth in the HUD Code. Of course, nothing in Section 3280.504(b) actually says or means that. To the contrary, the regulation is written in the disjunctive (each choice is set off by the word "or"), which gives every manufacturer the right to select any method prescribed by HUD. Murphy has to persuade this court that there is an *implied* picking duty with respect to wallboard designs in order to have any success on the merits; otherwise, his theory is negated by federal preemption law.

> The *Guidroz* court directly addressed this argument, where the court held that:
>
> Section 3280.504(b), like the regulation at issue in *Geier*, does not set a minimum standard for exterior wall construction, but rather the regulation provides manufacturers with federally authorized options for the construction of exterior walls. While HUD has, in some instances, designated certain manufactured housing standards as "minimums" or used modifying language to designate that the standard sets only a minimum requirement, there is no such language contained in 3280.504(b). To the contrary, the options are contained in one of the energy conservation regulations, designated by Congress as "preemptive." *See* 42 U.S.C. 5403 (g); *See also* 57 Fed. Reg. 6420 (Feb. 24, 1992) (proposing to amend 504 "to include preemptive standards significantly upgrading the existing energy conservation requirements"); 58 Fed. Reg. 54975, 54975 (Oct. 25, 1993)(amending 504 "to include preemptive

>standards significantly upgrading the existing energy conservation requirements"). Accordingly, as in *Geier*, if plaintiffs were successful in this action, a state rule of law would effectively eliminate one of the statutorily approved options, forcing manufactured home manufacturers to choose one of the other two options (ventilated or unventilated walls) over the option permitting placement of a vapor barrier on the "living space side" of the wall. Such a rule would conflict with, impair and frustrate the Federal superintendence of the manufactured home industry by effectively precluding the use of one of the federal chosen methods of exterior wall construction. **Under *Geier*, that result is impermissible. Plaintiffs' state law claims are impliedly conflict preempted.**

Guidroz, pp. 24-5. (emphasis added).

HUD expressly decides when to make a regulation geographically specific. It has done so in at least three situations. The interior vapor barrier design choice (§ 3280.504(b)(1)) is not a regulation that HUD decided to limit, geographically speaking. First, in Section 3280.506, HUD divided the country into thermal zones (1, 2 and 3). Alabama lies in zone 1, and homes situated there are required to have less insulation, for example, than homes sold into Maine, which lies in zone 3. HUD law does not permit a zone 1 home to be moved into zone 3 because the colder climate will cause the Alabama home to not perform correctly in a colder climate.

Similarly, the experience gained from major hurricanes over the last 15 years caused HUD to create wind zones (1, 2 and 3). 24 C.F.R. § 3280.305. Homes sold into the gulf coast regions are now designed with higher wind tolerances than homes sold into inland areas. The HUD Code does not permit a wind zone 1 home to be sold into the hurricane prone coastal regions (wind zones 2 and 3) for obvious reasons.

Lastly, and most importantly, HUD amended the wall design regulation last year to permit the use of external vapor barriers in certain homes. That regulation did not alter the other design options prescribed by HUD, as internal vapor barrier design is still

permitted everywhere.[3] In connection with that amended regulation, HUD limited the use of external vapor barriers to certain areas within the gulf region (§ 3280.504(b)(5)), but did not geographically limit the use of any other wallboard design. The point is, HUD chooses when to limit design choices to specific geographical areas, when it is proper to do so. The fact that HUD consciously chose *not to limit* the use of interior vapor barriers in the south underscores the weakness of Murphy's position. Murphy views this case as an opportunity fill a perceived gap in the law by fixing what HUD "overlooked," albeit through a tortured and misplaced application of regulatory construction standards (i.e., the Section 3280.303(b) argument). The regulatory history relating to wall designs demonstrates that HUD was, and is, actively regulating wall designs. 58 F.R. 54975 (Oct. 25, 1993); 67 F.R. 20400 (Apr. 24, 2002); 69 F.R. 70016 (Dec. 1, 2004); 70 F.R. 72024 (Nov. 30, 2005). The fact that HUD reached a different interpretation than Murphy on a point of technical design should not persuade this Court to alter controlling administrative regulations crafted by HUD.

## VI.     Conclusion.

For the reasons stated herein, Southern urges this Court to grant its Motion for Judgment on the Pleadings based on federal preemption standards.

        Respectfully submitted,

        /s W. Scott Simpson__
        W. Scott Simpson, Attorney for Defendant
        Southern Energy Homes, Inc.

---

[3] The new regulation does not apply to our case since the Murphy home was constructed in 2003 – 3 years before the new regulation.

**OF COUNSEL:**

RITCHEY & SIMPSON, PLLC
3288 Morgan Drive, Suite 100
Birmingham, Alabama 35216
Telephone: (205) 876-1600
Facsimile:  (205) 876-1616
Email: wssimpson@ritcheysimpson.com

Thomas W. Thagard, III
Edward S. Sledge, IV
MAYNARD, COOPER & GALES, P.C.
1901 6th Avenue North, Suite 2400
AmSouth/Harbert Plaza
Birmingham, Alabama  35203-2618
Telephone:   (205) 254-1000
Facsimile:    (205) 254-1999

## CERTIFICATE OF SERVICE

I hereby certify that on the 31st day of May, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Charles Lance Gould**
  lance.gould@beasleyallen.com holly.stroh@beasleyallen.com
- **Carter Gibson Vance**
  gibson.vance@beasleyallen.com heidi.bowers@beasleyallen.com


　　　　　　　　　　　　　　　　　　　　/s W. Scott Simpson
　　　　　　　　　　　　　　　　　　　　Of Counsel