**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION**

| | |
|---|---|
| **HAROLD KELLY MURPHY,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No.: 2:06-cv-618-MEF |
| ) | |
| **SOUTHERN ENERGY HOMES, INC.,** ) | |
| **et al.,** ) | |
| ) | |
| Defendants. ) | |

### BRIEF OF SOUTHERN ENERGY HOMES, INC. IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT

Defendant, Southern Energy Homes, Inc. ("Southern"), respectfully submits the following brief in opposition to plaintiff's motion for leave to amend complaint (Pacer Doc. 38) that was filed seven (7) months after the deadline established by this Court's August 22, 2006 scheduling order. (Pacer Doc. 11, p. 2, § 4)

### FACTS AND PROCEDURAL POSTURE

The plaintiff, Harold Kelly Murphy ("Murphy"), filed his original Complaint with the Circuit Court of Montgomery County, Alabama on June 14, 2006. (Pacer Doc. 1: Part 2) Southern removed the case to this Court on June 14, 2006. (Pacer Doc. 1)

In the Complaint, Murphy vaguely claimed that his manufactured home is defective because of an unspecified defect in the home's exterior walls. (Pacer Doc. 1, Part 2, p. 2, ¶ 4) Southern propounded Interrogatories on September 27, 2006, to seek clarification of Murphy's claims.

On August 22, 2006, this Court entered a scheduling order in this case, pursuant to Fed.R.Civ.P. 16(b). (Pacer Doc. 11) This Court set a deadline of November 6, 2006 as

the cut-off date for Murphy to join additional parties and to amend his pleadings. (*See* Pacer Doc. 11, p. 2, § 4)

On September 1, 2006, Murphy provided Southern with his expert reports. From these reports, Southern learned that the vague wall defect claim alleged by Murphy in his original complaint was predicated on the presence of an interior vapor barrier in the home (i.e., vinyl wallpaper).

On March 15, 2007, Southern filed a Motion to Modify the Scheduling Order so that the parties could explore settlement through mediation. (Pacer Doc. 25) Murphy did not oppose the motion. Neither Southern nor Murphy sought leave to extend the deadlines for the amendment of pleadings. This Court granted the motion, and entered an Amended Scheduling Order on April 4, 2007. (Pacer Doc. 30) The Amended Scheduling Order provided that the time for any motions to amend the pleadings and to add parties had expired. (Pacer Doc. 30, p. 2, § 4)

On May 9, 2007, Southern filed a Motion for Judgment on the Pleadings. (Pacer Doc. 32) Murphy opposed the motion (Pacer Docs. 36 and 37), and Southern filed a reply brief. (Pacer Doc. 39) Southern relied in part, on a decision from the Federal District Court for the Western District of Louisiana, *Guidroz v. Champion Enterprises, Inc., et al.*,[1] where the court dismissed a nearly identical class action complaint based on the doctrine of federal preemption. The *Guidroz* court held that a claim of product defect based on the presence of interior vapor barriers was preempted because the HUD Code[2]

---

[1] Southern supplied this Court with a copy of the *Guidroz* decision at Pacer Doc. 33.
[2] Manufactured homes are regulated by the Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401 *et seq*. The manufactured home building code is promulgated by the United States Department of Housing and Urban Development ("HUD"). The "HUD Code," as it is commonly referred, is located at 24 C.F.R. § 3280.

expressly permits the use of interior vapor barriers in wall designs. *Guidroz*, at p. 24-25; 24 C.F.R. § 3280.504(b)(1). The *Guidroz* court granted plaintiffs leave to file an amended complaint on May 17, 2007; however, the court emphasized the correctness of its first decision. The court held that any *amended* claim that alleged a defect based on the presence of an interior vapor barrier was preempted. (*See* court order, attached hereto as **Exhibit A**; and hearing transcript, attached hereto as **Exhibit B**, p. 4: 10-16). The defendants in *Guidroz* recently filed a motion to dismiss the *amended* complaint on preemption grounds. The *Guidroz* court has scheduled a hearing on that motion for July 18, 2007. (**Exhibit C**)

Murphy filed a motion to amend the complaint on May 25, 2007. (Pacer Doc. 38). Murphy's proposed amended complaint is almost identical to the amended complaint in *Guidroz*.[3] Murphy admits that his motion is necessary to address the *Guidroz* decision in the context of Southern's motion for judgment on the pleadings. (Pacer Doc. 38, p. 2, ¶¶ 5 and 7) He contends that this Court should grant his motion so that he can "clarify" his facts and try to overcome the preemption defense. (Pacer Doc. 38, p. 2, ¶ 7) Murphy relies solely on Rule 15 of the Federal Rules of Civil Procedure, maintaining that leave should be "freely" given in the "interest of justice." (Pacer Doc. 38, p. 2, ¶ 6) Murphy overlooks the fact that he must first satisfy Rule 16(b) because his amended complaint is seven (7) months too late.

Murphy argues that Southern will not suffer prejudice because no depositions have been taken. (Pacer Doc. 38, p. 3, ¶ 9) Southern disagrees. The parties have

---

[3] Not coincidentally, Murphy's lawyers also represent the *Guidroz* plaintiffs.

3

scheduled all depositions in the case in July and early August.[4] Time is of the essence with respect to scheduling, as Southern's expert reports must be provided by August 17, pursuant to this Court's latest scheduling order. (Pacer Doc. 30, p. 2, § 8) An "eleventh hour" shift in Murphy's theory will disrupt the scheduling and prejudice Southern's defense of this case.

Predictably, Murphy may argue that his amended allegations are "new" and "different than" the preempted claims he originally pleaded. If Murphy takes this position, then his motion to amend should be denied under Rule 16(b) because of a lack of diligence. Murphy's tactics are a textbook example of pleading *seriatim* in order to overcome a dispositive motion, which is not permitted by law.

Alternatively, Murphy may contend that his proposed amended complaint offers nothing new, since he argues that such allegations simply "clarify" the facts previously pleaded, and that he "fully" explained these facts in his responses to Southern's interrogatories, served December 21, 2006. (Pacer Doc. 38, ¶¶ 7 and 8; a copy of Murphy's interrogatory answers are attached hereto as **Exhibit D**) If Murphy takes this alternate position, then this Court should deny his motion under the futility doctrine because a wallboard claim, camouflaged in other facts, is still preempted. *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004)(a district court's denial of leave to amend under the futility doctrine is justified where the complaint, as amended, is still subject to dismissal); Fed.R.Civ.P. 15(a).

---

[4] Murphy's deposition is set for the week of July 9; Southern's corporate representative deposition will be taken the following day. Murphy's experts are scheduled to be deposed July 18. Murphy is scheduled to make his home available for inspection at the end of July. Southern's experts are due to be deposed soon thereafter.

4

For the reasons discussed below, this Court should deny Murphy's motion to amend, or alternatively, grant Southern's motion for judgment on the pleadings, which would render Murphy's motion moot.

## ARGUMENT

Because Murphy seeks leave to amend his Complaint *after* the amendment deadline set forth in this Court's scheduling order, Murphy must satisfy Federal Rules of Civil Procedure 16 and 15.  *Sosa v. Airprint Sys.*, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998)("When a motion to amend is filed after a scheduling order deadline, Rule 16 is the proper guide for determining whether a party's delay may be excused."). "It is only after the court addresses whether the proposed amendment may be granted under Rule 16 that the court is to determine whether it is proper under Rule 15." *Nobles v. Rural Comm. Ins. Serv.*, 303 F.Supp.2d 1279, 1283 (M.D. 2004)(citing *Sosa*, 133 F.3d at 1419); *see also Heslin-Kim v. CIGNA Group Ins.*, No. 9:04-23197-23, 2005 U.S. Dist. LEXIS 18830, at *7 (D. S.C. July 14, 2005)(holding that Rule 16 standard is more rigorous than the Rule 15 standard).

**I.    If Murphy Claims That His Proposed Amended Allegations Are New And Different, Then His Motion Should Be Denied Under Rule 16(b) For Lack Of Good Cause.**

Rule 16 requires a district court to enter a scheduling order that dictates deadlines for the amendment of pleadings, among other things. *Wasdin v. Cheetah Transportation, L.L.C.*, No. 5:05-cv-340 (DF), 2006 U.S. Dist. LEXIS 88728, at *4 (M.D. Ga. December 7, 2006); Fed,R,Civ.P. 16(b)(1). "A schedule [entered by the court] shall not be modified except upon a showing of **good cause** and by leave of the district judge. . ." Fed.R.Civ.P. 16(b)(emphasis added). "This good cause standard precludes modification unless the

5

schedule cannot 'be met despite the diligence of the party seeking the extension.'" *Sosa*, 133 F.3d at 1418 (citing Fed.R.Civ.P. 16 advisory committee's note); *O'Connell v. Hyatt Hotels*, 357 F.3d 152, 155 (1st Cir. 2004) ("unlike Rule 15(a)'s 'freely given' standard, which focuses mostly on the bad faith of the moving party and the prejudice to the opposing party . . . Rule 16(b)'s 'good cause' standard emphasizes the diligence of the party seeking the amendment") (citation omitted). A plaintiff seeking leave to amend a complaint after a scheduling deadline has passed must satisfy Rule 16 because "[o]therwise, scheduling order deadlines would be 'meaningless' and the good cause requirement articulated by Rule 16(b) would effectively be read out of the Federal Rules of Civil Procedure." *Anderson v. Jefferson*, 78 F. Supp.2d 1266, 1269 (S.D. Ala. 1999)(*citing Sosa*, 133 F.3d at 1419); *The Homebingo Network, Inc. v. Cadillac Jack, Inc.*, No. 05-0701-WS-B, 2006 U.S. Dist. LEXIS 87502, at *5 (S.D. Ala. November 29, 2006)(holding that scheduling orders are firm settings that must be taken seriously).

*Sosa* teaches that a court's inquiry into a plaintiff's "diligence" should focus on the plaintiff's failure to ascertain information before filing suit; the plaintiff's disregard of available information; and any delays occasioned by the plaintiff's failure to act on information obtained in discovery. *Sosa*, 133 F. 3d at 1418. These factors are not exhaustive, as a showing of diligence must turn on the particular facts of the case. Although the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, "the focus of the inquiry is upon the moving party's reasons for seeking modification." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). If that party was not diligent, the inquiry should

end. *Id.* at 609; *Lord v. Fairway Elec. Corp.*, 223 F. Supp.2d 1270, 1277 (M.D. Fla. 2002).

A court should consider other relevant criteria as well. For example, a long delay between the amendment deadline and the plaintiff's motion to amend is a valid consideration. *See Stephens v. Georgia Dept. of Trans.*, No. 04-14222, 2005 U.S. App. LEXIS 10295, at *3-4 (11th Cir. 2005 May 31, 2005)(unpublished)(holding that a delay of six months was untimely under the Rule 16(b) "good cause" standard); *Marco Island Cable, Inc. v. Comcast Cablevision of the South, Inc*., No. 2:04-cv-26-FtM-29DNF, 2006 U.S. Dist. LEXIS 41527, at *3 (M.D. Fla. June 21, 2006)(five month delay held untimely under Rule 16(b)). Likewise, "[i]f the facts have not changed since the filing of the original complaint, a court should conclude that a party was not diligent under Rule 16(b)." *See Anderson*, 78 F. Supp.2d at 1269.

A district court's decision to enforce its pre-trial order will not be disturbed on appeal absent an abuse of discretion. *Santiago v. Lykes Bros. Steamship Co*., 986 F.2d 423, 427 (11th Cir.1993).

One of the two possible positions Murphy will take is that the proposed amendment *does* substantively alter his original complaint by alleging three (3) new defect allegations. Murphy may try to take this position to distance himself from the preemptive reach of the HUD Code, as discussed in the *Guidroz* decision. Murphy's new allegations parrot his original theory, that the "home uses a design that incorporates a vapor barrier on the 'living side' of the wall structures." However, in addition to the vapor barrier allegation, Murphy may argue that the home is defective because Southern combined the internal vapor barrier design with one or more of the following *additional*

7

"defective" designs: (1) "wall cavities"; (2) "and external coverings or sheathing"; "and/or" (3) "ventilation systems that causes moisture to accumulate and remain in the wall cavities of the manufactured home." (Pacer Doc. 38, p. 2, ¶ 6)[5]

Murphy's motivation to amend does not satisfy the Rule 16 "diligence" requirement.  Factually speaking, nothing has changed.  The timing of Murphy's motion is not based on "newly discovered evidence," that was unavailable to Murphy despite diligent inquiry (as required by Rule 16).  Instead, Murphy waited **seven months** to recast his defect theories – on the eve of Southern's expert report deadline – in order to dodge the motion for judgment on the pleadings.  Murphy's actions demonstrate *lack* of diligence, as the amendment rules were not designed to be used as a ploy to bolster pleadings in the face of a dispositive motion.[6]  *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981)(upholding order denying motion to amend complaint when summary judgment motion was filed and taken under submission by the court). *Helus v. Equitable Life Assur. Soc'y of the United States*, 309 F. Supp. 2d 1170, 1176-77 (N.D. Cal. 2004)(denying motion to amend when summary judgment motion was pending); *MEDX Inc., of Fla. v. Ranger*, No. 92-3099, 1993 U.S. Dist. LEXIS 3775, at *8-9 (E.D. La. March 19, 1993)(same); *Gaylord Shops, Inc. v. South Hills Shoppers' City, Inc.*, 33 F.R.D. 303 (W.D. Pa. 1963)(same); *Eisenmann v. Gould-National Batteries, Inc.*, 169 F.

---

[5] Murphy does not tell us how these additional features are defective as required by the Rules of Civil Procedure. *See Old Time Enterprises, Inc. v. International Coffee Corporation*, 862 F.2d 1213, 1219 (5th Cir. 1989) (unclarified generalities and conclusory allegations, together with alternative "and/or" allegations, are the type of pleading tactics that can result in a complaint failing to comply with Fed.R.Civ.P. 8(a) and (e)).

[6] Assuming, *arguendo*, that Murphy satisfies the Rule 16 good cause requirement, Murphy's actions still run afoul of Rule 15. Permitting Murphy to allege a new theory on the eve of every important deposition in the case and approximately 60 days before Southern's expert reports are due to be filed is prejudicial to Southern.

Supp. 862, 864 (E.D. Pa. 1958)(same); *AmerisourceBergen Corp. v. Dialysis West, Inc.*, 445 F.3d 1132, 1136-37 (9th Cir. 2006) (court denied motion to amend while a motion for judgment on the pleadings was pending); *Thompson v. Illinois Dept. of Prof. Reg.*, 300 F.3d 750, 758 (7th Cir. 2002) (district court did not abuse its discretion in denying leave to amend complaint and curtailing "cat and mouse game of motions to dismiss followed by a motion to amend."). The federal courts should not be used a forum for testing alternate legal theories seriatim. *Fla. Evergreen Foliage v. E.I. Dupont De Nemours & Co.*, 470 F.3d 1036, 1042 (11th Cir. 2006) (citing *Freeman v. Continental Gin Co.*, 381 F.2d 459, 469-70 (5th Cir. 1967) and 6 Wright & Miller, *Federal Practice and Procedure* § 1489 (2d ed. 1987)).

Murphy's inability to prove good cause is fatal to his motion to amend. Accordingly, this Court should deny Murphy's motion.

> **II.     If Murphy Claims That His Proposed Amended Allegations Are Simply A Clarification Of Prior Allegations, Then Murphy's Motion Should Also Be Denied Based The Futility Doctrine Of Rule 15(a).**

The United States Supreme Court has held that a court should consider the following non-exhaustive list of factors when deciding whether to grant a motion to amend a complaint under Rule 15: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962). A district court's denial of leave to amend under the futility doctrine is justified where the complaint, as amended, is still subject to dismissal. *Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1263 (11th Cir. 2004).

If Murphy claims that his proposed amended complaint does not substantively change his allegations, then this Court should deny his motion under the futility doctrine because his claims are still preempted. Simply camouflaging the internal vapor barrier claim with other vague allegations (as Murphy attempts to do), is a futile act that does not justify the grant of his motion under Rule 15.[7] *See Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir. 1983) (holding under Rule 15 that it is proper to refuse a request to amend where the party seeking the amendment merely restates the same facts using different language).

In *Guidroz*, the court held that a claim of product defect based on a manufacturer's use of internal vapor barriers was impliedly conflict preempted because the plaintiffs sought to outlaw the use of HUD's interior vapor barrier wall design regulation (Section 3280.504(b)(1)) in the humid and fringe zone climates. The Court correctly reasoned that if plaintiffs were permitted to proceed with this theory, then manufacturers would be precluded from utilizing a federally prescribed method of construction. Such a result would frustrate HUD's policy to provide manufacturers with an unfettered range of approved wall design options. Thus, a claim of product defect based on the presence of an interior vapor barrier – *by itself* – is preempted by federal

---

[7] Murphy's choice of "alternative" defects further demonstrates that he is seeking to re-package his original preempted theory. For example, the new allegations proposed by Murphy include unspecified problems with "external covering and sheathing." This term is referenced in Sections 3280.504(b)(2) and (4) of the HUD Code. Murphy's original argument was that Southern erred by not choosing a better design, i.e., a "(b)(2)" wall or a "(b)(4)" wall. His new argument is a furtive attempt to say the same thing, albeit with different terminology. Instead of claiming that Southern erred by not selecting a "b2" wall for example, he claims that Southern erred by constructing the wall assembly with improper "external covering and sheathing," which is discussed in that section. Either way, Murphy argues the same point – Southern had a duty to pick the "best" wall design available, which is contrary to the HUD Code.

law. Murphy's new allegations would still be preempted because he attempts to outlaw the use of internal vapor barriers when such a design is *combined with* other features determined by Murphy to be problematic.

Although Murphy has left us to guess what specific design options are defective, we are told that his home is "defective" because it employs a design that incorporates a vapor barrier on the living-space side of the wall, *combined with* certain wall cavities, external sheathing "and/or" ventilation systems. The vagueness of his allegations demonstrates that Murphy is more concerned with *running from* the preemption defense, rather than *running to* any viable theory of recovery.

When HUD promulgated the exterior wall regulation, 24 C.F.R. § 3280.504(b), it gave manufacturers a range of three choices (now four) from which to select. HUD did not condition the selection of any one wall design choice on a manufacturer's incorporation of a certain wall cavity design, sheathing product or ventilation system. Had it been HUD's wish to link wall design options to other construction features, then HUD certainly would have made that intention clear. One reads the HUD Code in vain for any support for Murphy's new theory because HUD never intended to limit or condition the selection of a wall design option on the use of any other construction feature.

If this Court permits plaintiff's amended theory to go forward, then two rules of law will emerge with respect to wall designs under the HUD Code. In every state *but Alabama*, manufacturers will be permitted to design walls in conformity with Section 3280(b)(1) in unfettered fashion, as HUD intended. By contrast, Alabama homes will be required to satisfy a unique and purely local standard of care that conditions the selection

of the interior vapor barrier design on a range of other features that may include a specialized wall cavity, a particular type of external sheathing or a locally designated ventilation system - depending on the outcome of this case. This is precisely the type of outcome that conflict preemption doctrine was designed to prevent - the emergence of local standards of care that interfere with federally approved options.

The law provides that a theory of recovery is conflict preempted when it seeks to modify a federal standard by the inclusion of additional, local requirements that are inconsistent with federal policy. There are numerous examples in decisional law where courts have struck down local standards that improperly supplant federal statutes and regulations, with local regulations which seek to improperly "augment" federal law. *California v. Federal Energy Regulatory Commission*, 495 U.S. 490, 506, 110 S.Ct. 2024, 109 L.Ed.2d 474 (1990) (finding conflict preemption when a California regulation attempted to impose stricter minimum flow requirements on a hydroelectric project than those required by the Federal Energy Regulatory Commission); *Perez v. Campbell*, 402 U.S. 637, 91 S.Ct. 1704, 29 L.Ed.2d 233 (1971) (superseded by statute)(finding conflict preemption of a state statute which required drivers unable to pay accident expenses to forfeit their licenses because it conflicted with the federal bankruptcy code); *Hines v. Davidowitz*, 312 U.S. 52, 61 S.Ct. 399, 85 L.Ed. 581 (1940) (finding conflict preemption of a state statute which required aliens to register and carry identifications cards which was more than required by federal law, and it interfered with federal purpose); *Securities Industry Association v. Connolly*, 883 F.2d 1114 (1st Cir. 1989) (finding conflict preemption of state regulation that was designed to prevent a party from enforcing an arbitration contract by "visiting a penalty" on that party because it was "at odds with the

policy which infuses the [Federal Arbitration Act]" – resolving all issues in favor of arbitration); *Darling v. Mobil Oil Corp.*, 864 F.2d 981 (2nd Cir.1989)(finding conflict preemption of state regulation that added five elements limiting reasonable grounds for termination when the federal statute only requires a term that is "both reasonable and of material significance" for franchisor to terminate a franchise agreement. In rejecting the franchisee's argument that the Connecticut statute supplements rather than supplants the federal scheme, the court pointed to the potential for conflict between these two statutes.); *Humboldt Oil Co. v. Exxon Co.*, U.S.A., 822 F.2d 373 (9th Cir. 1987), *cert. denied*, 485 U.S 1021 (finding preemption of state regulation that authorized treble damages for refusal to accept assignment of a petroleum franchise under notice of termination because it was an obstacle to the accomplishment of Congress' interest in a uniform policy for petroleum franchise termination); *Hawaii Newspaper Agency Ltd.Ptshp v. Bronster*, No. 95-00635, 1996 U.S. Dist. LEXIS 1082 (D. Haw. Jan. 3, 1996) (finding conflict preemption of state regulation that imposed additional reporting requirements to maintain antitrust immunity for newspaper Joint Operating Agreements which were not contemplated by Congress in enacting the federal reporting requirements).

Murphy's motion to amend should be denied because the proposed amendment would be futile; it alleges claims that seek to impose local standards that supersede federally prescribed options under 24 C.F.R. § 3280.504(b).[8]

---

[8] Southern incorporates by reference its motion for judgment on the pleading and its reply brief in connection with the futility argument. Fed.R.Civ.P. 10(c).

## CONCLUSION

Murphy's motion to amend the complaint should be denied by this Court. If this Court interprets Murphy's proposed amended allegations as substantive changes, then his motion lacks good cause under Rule 16, and is prejudicial under Rule 15. Fed.R.Civ.P. 15 and 16. If this Court finds that Murphy's amended pleadings do not present substantive changes, then his motion is due to be denied under the futility doctrine of Rule 15.

        Respectfully submitted,

        /s W. Scott Simpson
        W. Scott Simpson, Attorney for Defendant
        Southern Energy Homes, Inc.

**OF COUNSEL:**

RITCHEY & SIMPSON, PLLC
3288 Morgan Drive, Suite 100
Birmingham, Alabama 35216
Telephone: (205) 876-1600
Facsimile: (205) 876-1616
Email: wssimpson@ritcheysimpson.com

Lee E. Bains, Jr.
Thomas W. Thagard, III
Edward S. Sledge, IV
MAYNARD, COOPER & GALES, P.C.
1901 6th Avenue North, Suite 2400
AmSouth/Harbert Plaza
Birmingham, Alabama 35203-2618
Telephone:   (205) 254-1000
Facsimile:   (205) 254-1999

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of June, 2007, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Charles Lance Gould**
  lance.gould@beasleyallen.com holly.stroh@beasleyallen.com
- **Carter Gibson Vance**
  gibson.vance@beasleyallen.com heidi.bowers@beasleyallen.com

        /s W. Scott Simpson
        Of Counsel