IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **HAROLD KELLY MURPHY,** | * |
| | * |
|     **Plaintiff,** | * |
| | * |
| vs. | * CASE NO.: 2:06-cv-618-MEF |
| | * |
| **SOUTHERN ENERGY HOMES, INC., et al.,** | * |
| | * |
|     **Defendants.** | * |

**PLAINTIFF'S MOTION TO STRIKE
REPLY BRIEF IN SUPPORT OF DEFENDANT'S
MOTION FOR JUDGMENT ON THE PLEADINGS**

    Plaintiff, by counsel, hereby files this Motion to Strike Defendant's Reply Brief in Support of Motion for Judgment on the Pleadings.

**Introduction**

    Defendant has filed a Reply brief which quotes an unauthenticated letter from a HUD official which constitutes inadmissible hearsay. Defendant further misleads this Court regarding the *Guidroz* Court's statements by failing to note that the Court in fact did review the amended complaint to see if it passed preemption muster: "[I've read the amended complaint]…only in such detail as I thought I might have to deal with Mr. Domingue's [Defense counsel] <u>argument that the amendment would be without benefit, and certainly it isn't that</u>. <u>So I've read enough to know that you get past that hurdle anyway</u>." Finally, and most importantly, the Reply and the HUD "letter" are due to be stricken because even if true, it does not support preemption.

**1. Standard of Review**

Federal Rule of Civil Procedure Rule 12(f), mandates that this Court can "order stricken from any pleading any . . . redundant, immaterial, impertinent, or scandalous matter." *Southeast v. Bd. Of Seminole County FL*, 778 F.Supp. 518, 519 (M.D.Fla. 1991); *Bram v. Williamson Tobacco Corp.*, 201 F.2d 819, 822 (6th Cir. 1953); *Xerox Corp. v. ImaTek, Inc.*, 220 F.R.D. 241 and 220 F.R.D. 244 (D. Md. 2004) (striking immaterial allegations), *Hare v. Family Pub. Service,* 342 F.Supp. 678, 685 (D. Md. 1972, n. 2) (if allegations are immaterial and likely to prejudice later litigation, must be stricken). These include "statements that do not pertain, and are not necessary, to the issues in question." *Id.* One test for whether it is material "is whether proof concerning it could be received at trial, if it could not, then the matter is immaterial and impertinent." *Id.* The Federal Appeals Courts have instructed:

> The importance of using the Rules to <u>uncover bogus claims and defense</u>, thereby reducing the parties' dispute to its bare essentials, cannot be overemphasized…

*Byrne v. Nezhat*, 261 F.3d 1075, 1132-33 (11th Cir. 2001) (emphasis supplied).

**2. Argument**

Defendant has misrepresented what the *Guidroz* Court stated. Indeed the Court in *Guidroz* did at least review the amended complaint to make a preliminary determination that he should grant the amendment to ensure that the Court did not still think even the amended complaint was preempted:

> And I'm certainly not prejudging it because I really haven't read with any detail at all the amended complaint, only to such – only in such detail as I thought I might have to deal with Mr. Domingue's [Defense counsel] <u>argument that the amendment would be without benefit, and certainly it isn't that</u>. <u>So I've read enough to know that you get past that hurdle anyway.</u>

*See* Transcript of hearing in *Guidroz* at p.5-6 attached to Defendant's Reply Brief (emphasis supplied). Defendant stopped literally just short of quoting this portion of the hearing transcript. In any event, the ultimate outcome is not controlling in any event to this Court but a ruling would be expected soon enough.

More troubling is that attached to its Reply is an unauthenticated letter which constitutes inadmissible hearsay.[1] This letter which apparently was obtained in a back room in Washington, DC by Defendant's trade / lobbying organization purports to be a comment by a HUD official who has reviewed some plaintiffs' complaints (not sure whose) wherein he renders opinions without the input of plaintiffs' counsel which directly contradict the Waiver in this case. The Waiver came about by official rulemaking and complied with the notice and comment period mandated by federal law. This HUD "official" would purport to avert this process by typing a few paragraphs onto a piece of paper which renders the entire HUD Code impotent. Plaintiff, at a minimum, should have the opportunity to depose this individual and obtain discovery on this preferential private meeting with the manufacturer.

Finally, and most importantly, the Reply and the HUD "letter" are due to be stricken because even if true, it does not support preemption (something Defendant is either woefully ignorant of or for which they purposefully misleading to this Court). Even if Defendant does not have to comply with "accepted engineering practices" because they selected one of the options under 3280.504b, they still must comply with the other preemptive requirements of the HUD Code which they have been alleged to have violated. For example, if a manufacturer chooses to utilize option 1 of 24 CFR

---

[1] It is troubling that despite ongoing discovery duties by these Defendants, this letter was not produced until this Reply brief despite the fact that it is nearly half a year old.

3

3280.504(b) and place a vapor barrier on the 'living side' of the exterior walls, it still has a duty to take steps to ensure that option 1 is implemented correctly by ensuring the home performs in the manner prescribed in, among other things, sections 3280.103(b) (ventilation system 'shall not create a negative air pressure…); 504 ('Condensation control and installation of vapor retarders'); 505 ('The opaque envelope shall be designed and constructed to limit air infiltration to the living area of the home. Any design, material, method or combination thereof which accomplishes this goal may be used').

If *knowingly* placing a vapor barrier in the hot and humid climate and *knowing* that it will destroy the home is allowed as the HUD letter suggests (e.g. you do not need to comply with accepted engineering practices), the Defendant still must – as Defendant tells this Court – meet the prescriptive (e.g. 3280.103(b) ventilation system 'shall not create a negative air pressure) or performance based requirements of the HUD Code (e.g. 3280.505 'The opaque envelope shall be designed and constructed to limit air infiltration to the living area of the home. Any design, material, method or combination thereof which accomplishes this goal may be used'). The bottom line is that the home is not supposed to condensate and these homes do. Any argument that HUD allows or mandates that they be built in such a manner that they condensate is smoke and mirror defense work.

It is indisputably wrong and against "accepted engineering practices" to place a vapor barrier on the living (inside) of the homes in the hot and humid climates and has been known since long before this home was built:

**Department of Housing and Urban Development (HUD) research Grant**
**1995 -** *Manufactured Housing Walls That Provide Satisfactory Moisture Performance in All Climates.*

> **"A current-practice manufactured housing wall with an interior vapor retarder was shown to provide satisfactory performance in cold climates, <u>but poor performance in a hot, humid climate</u>. The use of an interior vapor retarder in the wall of an air conditioned building exposed to a hot and humid climate can cause high relative humidity at its outside surface, thereby <u>providing a conducive environment for mold and mildew growth.</u>"**
>
> **Manufactured Housing Research Alliance**
> **1999 -** *Moisture Problems in Manufactured Homes,*
> *Understanding Their causes and Finding Solutions*
> **<u>"The interior vapor retarder acts like a dam holding water inside the wall board.</u> When the conditions support condensation inside the wall, water will begin to condense on the coldest material—in this case, the inner surface of the wallboard. If the conditions for drying are poor—the outside humidity is high and the vapor retarder blocks diffusion to the inside—moisture will begin to accumulate on the surface and saturate the material. If the wall board cannot dry out, <u>it will eventually fail completely</u>.**

If Defendant "chooses" to ignore the indisputable evidence (and as they allege HUD allows them to do so), they must ensure that the other sections of the Code are followed to keep the hot, moist air from destroying the home. Defendant has not denied that these other requirements must be met and this Court should focus on the double-speak Defendant makes when trying to confuse this Court.[2]

---

[2] Interestingly enough, one of Defendant's Counsel in two of Plaintiff's Counsel's other cases against a different manufacturer produced discovery responses that states that the manufactured homes were built to 3280.504(b)(3) **not** the (b)(1) standard Defendant is arguing is prescriptively preempted in this case. This demonstrates that **prior** to the waiver, the manufactured home industry had at their disposal a viable option to which to build the homes in the Gulf Coast region which did not **require** the placement of a vapor barrier on the inside of the home. Also, (b)(3) is not prescriptive and states that: "or (3) Wall cavities must be constructed so that ventilation is provided to dissipate any condensation occurring in these cavities; or" 24 USC 3280.504(b)(3). There is no "prescriptive" requirement here only that "ventilation" be provided to dissipate condensation. Since there is no specific manner which must be followed in (b)(3), the "performance" nature of the HUD Code is again highlighted. Defendant has been armed with a HUD Code that gives them alternative construction methods to "ensure" "durable" housing and it is disingenuous for them to argue HUD made them do this.

WHEREFORE, Plaintiff respectfully requests that this Court Strike Defendant's entire Reply Brief and grant such other relief as is just and proper.

/s/ C. Lance Gould
C. LANCE GOULD (ASB-0913-G66C)
Attorney for Plaintiff

**OF COUNSEL:**

**BEASLEY, ALLEN, CROW,
METHVIN, PORTIS & MILES, P.C.**
Attorneys at Law
Post Office Box 4160
Montgomery, AL  36103-4160
(334) 269-2343
(334) 954-7555 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that I have electronically filed the original of the foregoing document in this Court and served a copy upon all Defendants of record <u>as listed below</u> by placing a copy of same in the United States Mail, first class, postage prepaid on this the 14th day of June, 2007.

/s/ C. Lance Gould
OF COUNSEL

W. Scott Simpson
RITCHEY & SIMPSON, PLLC
3288 Morgan Drive, Suite 100
Birmingham, Alabama 35216
Telephone: (205) 822-3422
Facsimile: (205) 822-3618
e-mail: wssimpson@bellsouth.net

Lee E. Bains, Jr.
Thomas W. Thagard, III
Edward S. Sledge IV
MAYNARD, COOPER & GALE, P.C.
1901 Sixth Avenue North
2400 AmSouth/Harbert Plaza
Birmingham, AL 35203
(205) 254-1000 (Telephone)
(205) 254-1999 (Facsimile)
lbains@maynardcooper.com
tthagard@maynardcooper.com
sledge@maynardcooper.com