**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA,**
**NORTHERN DIVISION**

| | | |
|---|---|---|
| **HAROLD KELLY MURPHY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 2:06-cv-618-MEF** |
| | ) | |
| **SOUTHERN ENERGY HOMES, INC.,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

**COMES NOW** the Defendant, Southern Energy Homes, Inc. ("Southern"), by and through counsel of record, and pursuant to Rule 56 of the *Federal Rules of Civil Procedure*, submits the following Memorandum of Law in Support of its Motion for Summary Judgment. Southern also relies on evidentiary submissions, which are attached hereto and incorporated by reference herein as Exhibits A, B, C and D.

**I.     INTRODUCTION**

This is a manufactured housing case where the plaintiff, Harold Kelly Murphy ("Murphy"), claims that his home is defective because Southern constructed the home with an internal vapor barrier consisting of vinyl coated wallpaper.  Murphy contends that Southern should not have utilized an internal vapor barrier in his home even though the federal building code has expressly permitted this design since 1975. 24 C.F.R. § 3280.504(b)(1).   For the reasons discussed below, this Court should grant Southern final summary judgment.

## II.    NARRATIVE STATEMENT OF UNDISPUTED FACTS

Murphy filed this action on June 14, 2006. (Complaint, attached hereto as Exhibit A)[1]

Murphy alleges the following eleven claims :  (1) violation of the Magnuson Moss Act, 15

U.S.C. 2301 et seq.; (2) breach of express warranty; (3) breach of the implied warranty of

merchantability; (4) breach of the implied warranty of fitness for a particular purpose; (5) breach

of the implied warranty of habitability; (6) negligence; (7) wantonness; (8) unjust enrichment;

(9) fraudulent concealment; (10) negligent or wanton fraudulent concealment; and (11) violation

of Alabama's Extended Manufacturer's Liability Doctrine.  (Exhibit A, pp. 4-11)

Murphy received an express warranty from Southern in connection with his home (the

"Warranty").  (Exhibit A, p.5, ¶ 24; Harold Murphy Deposition, p. 76: 6-19, attached hereto as

Exhibit B[2]).  The Warranty is limited, and it does not warrant "[d]effects or damages resulting

from condensation."  (Affidavit of Don McNutt and Homeowner's Manual, p. 7-8, attached

hereto collectively as Exhibit C)  Murphy contends that the walls of his home are damaged from

condensation, due to the location of the vapor barrier.  (Exhibit B, p. 154: 10-16; p. 56: 4-19;

Exhibit A, p. 2, ¶ 4)  The Warranty also waived all implied warranties to the extent permitted by

law.  (Exhibit C, Homeowner's Manual, p.7)

Murphy does not claim any personal injury in this case.  When questioned the subject,

Murphy testified as follows:

Q.  The home – you haven't been physically injured in the house?

A.  Stumped my toe a time or two.

---

[1] Murphy filed his Complaint in the Circuit Court for Montgomery County, Alabama.  Southern removed this action to the United States District Court for the Middle District of Alabama on July 14, 2006.  Murphy's Complaint was attached to Southern's Notice of Removal at Exhibit C.

[2] All excerpts from the Deposition of Murphy are attached hereto as Exhibit B.

Q.   All right.  What I'm saying is, you're not suing because you have any physical injury in the house?

A.   No.

\* \* \*

Q.   Okay.  So as far as the mental anguish – you're not suing because you have a health problem?

A.   No.

Q.  And you're not suing because the home has physically injured you?

A.   No.

\* \* \*

Q.  So you're not suing because of a near miss?[3]

A.  No sir.

(Exhibit B, p. 133: 5-11 and 22-23; p. 134: 1-2 and 11-13)

Murphy urges a claim for breach of the implied warranty of habitability.  However, when questioned, Murphy testified that his home is habitable.

Q.  You're living in the house now?

A.  Yes, sir.

Q.  And as far as you know, it's habitable?

A.  Yes.

(Exhibit B, p. 149: 8-11)

---

[3] Has Murphy suffered a "near miss" – i.e., been placed in immediate risk of harm – then he might have had a negligence claim under Alabama's zone of danger doctrine.  *Ex parte Grand Manor, Inc.*, 778 So. 2d 173, 179 (Ala. 2000).

Murphy claims that Southern breached the implied warranty of fitness for a particular purpose. The evidence establishes that Murphy never spoke to anyone at Southern before he purchased the home. (Exhibit B, p. 147: 4-12) The home was not specially ordered; Murphy saw the home at an independent mobile home lot and decided to buy it after he inspected it personally. (Exhibit B, p. 11: 12-23; p. 12: 1-15; p. 147: 21-22) Thus, there is no evidence that Murphy's purchasing decision was influenced by anyone working for Southern.

Murphy filed two counts of fraudulent concealment. (Exhibit A, p. 9, ¶¶ 52-61) However, Murphy has no evidence that Southern defrauded him or suppressed material facts.

Q. Has anyone lied to you from Southern Energy?

A. Not that I recollect.

Q. Has anyone concealed anything from you at Southern Energy?

A. Southern Energy? No, sir.

(Exhibit B, p. 149: 15-20)

Murphy contends that his home is defective because Southern constructed the walls of his home with an internal vapor barrier (vinyl-coated wallpaper).[4] However, one of Murphy's expert witnesses, Bobby Parks, testified that it is permissible for a manufacturer to build walls pursuant to 24 C.F.R. § 3280.504(b)(1). (Deposition of Bobby Parks, p. 182, attached hereto as Exhibit D) It is undisputed that the Murphy home is built to this standard. Parks is actively

---

[4] Walls with internal vapor barriers are governed by 24 C.F.R. § 3280.504(b)(1).

4

lobbying the Consensus Committee for HUD[5] to abrogate the use of internal vapor barriers through a change in the regulations.  (Exhibit D, pp. 117-120 and 181-82)[6]

### III.    ARGUMENT

### A.    SUMMARY JUDGMENT STANDARD

 "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986)(*quoting* Federal Rule of Civil Procedure 1). Summary judgment is proper under Federal Rule of Civil Procedure 56(c) where the movant shows that there is no genuine issue of material fact and that, based upon the undisputed facts, it is entitled to judgment as a matter of law.  *Early v. Champion International Corp*., 907 F.2d 1077, 1080 (11th Cir. 1990).  For a question of fact to be *genuine*, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586-87 (1986).  Instead, the evidence must be of such quality that "a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.  *Id*. at 249-50; *see also Early*, 907 F.2d at 1080.

In considering a motion for summary judgment, the trial court must consider the evidence in the light most favorable to the non-movant.  *Early*, 907 F.2d 1080.  However, the court is

---

[5] Federal statutory law creates a standing Consensus Committee, which must approve of proposed changes to the HUD Code before the Secretary of HUD publishes a proposed rule in the Federal Register.  42 U.S.C. § 5403(a)(4)-(6).

[6] The weakness of Murphy's position is obvious:  if Southern is liable for following the law, then why is Parks trying to change the law?  The question answers itself.

required to resolve only *reasonable* doubts in the non-movant's favor; it is not required to resolve *all* doubts in his favor. *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir. 1995); *Barnes v. Southwest Forest Industries, Inc*., 814 F.2d 607, 609 (11th Cir. 1987). "A court is not obligated to find that there is no conflict in the evidence; the court must merely find that there is not <u>substantial</u> evidence opposed to the moving party's position." *Jones v. Miles Laboratories, Inc*., 887 F.2d 1576, 1578 (11th Cir. 1989)(emphasis in original).

A movant is entitled to summary judgment where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 232. Where a movant has properly supported a motion for summary judgment, the burden shifts to the non-movant to demonstrate a genuine issue of material fact necessitating a trial. *Id.* The substantive law governing the plaintiff's claim determines which facts are material and which are irrelevant. *Anderson*, 477 U.S. at 248.

### B.    SOUTHERN IS ENTITLED TO SUMMARY JUDGMENT ON MURPHY'S FRAUD CLAIMS

Murphy alleges two claims for fraud. In Count Seven of the complaint, he alleges a claim for fraudulent concealment. (Exhibit A, pp.9-10) In Count Eight of the complaint, he alleges a claim for negligent/wanton fraudulent concealment. (Exhibit A, p. 10)

Alabama fraud law is codified at Alabama Code Sections 6-5-100 through -104. A claim for concealment or suppression is governed by Section 6-5-102. It provides that "[s]uppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case." Ala. Code § 6-5-102 (Repl. Vol. 2005). To prove a *prima facie* case of fraudulent suppression under Alabama law, a plaintiff must show that (1) the defendant had a duty to disclose an existing, material fact; (2) that the defendant had actual

knowledge of the fact and its materiality; (3) that the defendant suppressed that fact; (4) that plaintiff's lack of knowledge concerning that fact induced him to act; and (5) that the plaintiff suffered actual damage as a proximate result of acting. *Perry v. Household Retail Services, Inc.*, 953 F. Supp 1365, 1368 (M.D. Ala. 1996).

The duty to disclose rarely arises in arm's length transactions because "when both parties to a transaction are intelligent and fully capable of taking care of themselves and are dealing at arm's length and when there are no confidential relations between them, one of them owes no duty to disclose a material fact to the other without a request, and mere silence concerning such a fact is not fraud; there must be active concealment or misrepresentation. *DeWitt v. Long*, 519 So. 2d 1363, 1366 (Ala. Civ. App. 1987). Mere silence does not constitute fraud; there is no duty to disclose facts when information is not requested. *Hardy v. Blue Cross & Blue Shield*, 585 So. 2d 29, 32 (Ala. 1991). In a purchase and sale transaction, a duty to disclose typically exists only where there is a fiduciary relationship among the parties, or if a purchaser specifically inquires about a material condition concerning the property purchased. *Cato v. Lowder Realty Co.*, 630 So. 2d 378, 382 (Ala. 1993). The existence of a duty to disclose is a question of law to be determined by the trial judge, not a question of fact for the jury. *State Farm Fire and Cas. Co. v. Owen*, 729 So. 2d 834, 837-841 (Ala. 1998).

Murphy's suppression claims fail because Southern does not owe Murphy any legal duty to disclose any facts. There is no evidence of any direct transaction between Murphy and Southern, as Murphy purchased his home from an independent mobile home lot after inspecting it personally. (Exhibit B, p. 11: 12-23; p. 12: 1-15; p. 147: 21-22) Furthermore, there is no evidence of any confidential relationship between Murphy and Southern. Southern is a remote home manufacturer; Murphy is a consumer, who purchased the home from an independent

dealer.  Absent direct communications between the parties, there can be no duty to disclose.
*Cato*, 630 So. 2d at 382.

Even if a duty did exist, there this no evidence that Southern suppressed any material facts.  Murphy testified that Southern neither lied to him nor concealed anything from him:

Q.  Has anyone lied to you from Southern Energy?

A.  Not that I recollect.

R.  Has anyone concealed anything from you at Southern Energy?

B.  Southern Energy?  No, sir.

(Exhibit B, p. 149: 15-20)

Thus, Murphy cannot prove the existence of a legal duty or that Southern has suppressed any material facts.  For the reasons discussed herein, Southern respectfully urges this Court to grant Southern summary judgment on Murphy's claims for fraudulent concealment and negligent/wanton fraudulent concealment.

## C.    SOUTHERN IS ENTITLED TO SUMMARY JUDGMENT ON MURPHY'S TORT CLAIMS

Murphy advances three tort claims (in addition to fraud) wherein he alleges that his home was constructed and designed in an improper manner.    In Count Six of the Complaint, Murphy alleges negligent manufacture and design of his home. (Exhibit A, pp. 7-8)  In Count Seven of the Complaint, Murphy alleges wanton construction of his home.  (Exhibit A, p. 8)  Finally, in Count Eleven of the Complaint, Murphy alleges a product liability action under Alabama's Extended Manufacturer Liability Doctrine ("AEMLD"), claiming that the home was sold to him in a defective condition and that it was unreasonably dangerous.  (Exhibit A, pp. 10-11)  Murphy's tort claims fail for several reasons.

*First*, the economic loss doctrine bars any recovery in this instance.  In deposition, Murphy testified that he has not suffered any personal injuries in connection with his home. (Exhibit B, p. 133: 5-11 and 22-23; p. 134: 1-2 and 11-13)  His case is thus reduced to a claim for damage to the product itself.  In *Lloyd v. Wood Coal Co. v. Clark Equipment Co.*, 543 So. 2d 671 (1989), the Alabama Supreme Court discussed the economic loss rule as it applies in tort claims involving manufactured products.  There, the Court held that a manufacturer in a commercial relationship owes no duty under tort theories (including negligence and AEMLD) to prevent a product from injuring itself.  *Id.*  Where, as here, there is no personal injury and there is no damage to property other than to the product itself, the economic loss doctrine bars any recovery in tort.  *Id.*  Murphy's claims for negligence, wantonness and AEMLD are thus barred by the economic loss doctrine because property damage claims are not actionable.

Even though Murphy testified that the home has not injured him in any way, Murphy will likely tumble to a position that he suffered mental anguish and distress arising out of alleged defects in his home.  However, allegations of mental anguish under tort theories do not state a claim under Alabama law *unless* the plaintiff sustains an actual physical injury or the plaintiff is placed in immediate risk of physical harm (*i.e.* suffers a "near miss" under Alabama's zone of danger test).  *Ex parte Grande Manor, Inc.*, 778 So. 2d 173, 179 (Ala. 2000).  Murphy testified that he has no been injured by the home; furthermore, he did not suffer a "near miss" in connection with any alleged defects in his home. (Exhibit B, p. 133: 5-11 and 22-23; p. 134: 1-2 and 11-13)  Murphy's mental anguish claims, therefore, are due to be dismissed.

*Second*, Murphy's product liability claim under AEMLD fails because he cannot establish the *prima facie* elements of that claim.  To make a case for product liability under Alabama's AEMLD statute, Murphy must show:

> [A]n injury was caused by one who sold a product in a defective condition that made the product unreasonably dangerous to the ultimate user or consumer; that the seller was engaged in the business of selling such a product; and that the product was expected to, and did, reach the user without substantial change in the condition in which it was sold. *Sapp v. Beech Aircraft Corp.*, 564 So. 2d 418 (Ala. 1990). Furthermore, the burden of proof rests with the plaintiff to prove that the product left the defendant's control in an unreasonably dangerous condition and not fit for its expected use, and that that which caused the product to be in such an unfit condition in fact caused the injury. *Sears, Roebuck & Co. v. Haven Hills Farm, Inc.*, 395 So. 2d 991, 995 (Ala. 1981).

*Bell v. T.R. Miller Mill Co.*, 768 So. 2d 953, 957 (Ala. 2000).

Murphy's AEMLD claim fails because he has no evidence that his homes left Southern's factory in an "unreasonably dangerous" condition, or that the home "caused" him any injury. Indeed, the undisputed evidence is that, at worst, Murphy "stumped" his toe "a time or two" in the home. (Exhibit B, p. 133: 5-11 and 22-23; p. 134: 1-2 and 11-13) Because Murphy suffered no physical injury, Southern is due judgment as a matter of law on Murphy's claim under AEMLD.

*Third*, the Supreme Court of Alabama has held that exterior walls of homes are not products under the AEMLD. *Keck v. Dryvit Systems. Inc.,* 830 So.2d 1 (Ala. 2002) (holding that a house's exterior insulation finishing system is not a product); *see also*, *Wells v. Clowers Construction Co.,* 476 So. 2d 105, 106 (Ala. 1985) (holding that a fireplace is not a product as attachments or improvements to a home that become as much a part of a house as the four walls cannot be considered a product under the AEMLD). Given that the walls themselves are not a product, there is no cause of action under AEMLD.[7]

*Fourth* and finally, Murphy's tort claims fail because Murphy did not "special-order" his home. (Exhibit B, p. 11: 12-23; p. 12: 1-15; p. 147: 21-22) Alabama law provides that a mobile

---

[7] The issue of whether the home, as a whole, is a product under AEMLD appears to be an open question under Alabama law. *Ex parte Grand Manor*, 778 So. 2d 173, 179, n.4 (Ala. 2000).

home purchaser who *special-orders* a home directly from a manufacturer is owed a duty of reasonable care under tort theories, such as negligence.   Where, as here, a customer purchases a home from a retailer and does not special order it, a manufacturer owes no duties of care because the harm is deemed to be unforeseeable.  *Keck,* 830 So.2d at 21-24.  Accordingly, Murphy's negligence and wantonness claims fail because Southern does not owe Murphy any duties under tort law.

Based on the foregoing, it is clear that Murphy cannot advance claims for negligent or wanton construction or strict liability under AEMLD. Southern, therefore, is due judgment as a matter of law.

### D.    SOUTHERN IS ENTITLED TO SUMMARY JUDGMENT ON MURPHY'S UNJUST ENRICHMENT CLAIM

Murphy alleges a claim for unjust enrichment.  (Exhibit A, pp.8-9)  Murphy's claim for unjust enrichment fails because the parties are subject to a written agreement – an express warranty – and an unjust enrichment action cannot be maintained in the presence of an express agreement between the parties.

Under Alabama law, a party cannot recover on a claim of unjust enrichment where there is an enforceable agreement among the parties which addresses the same subject matter. *Kennedy v. Polar-Bek & Baker Wildwood Partnership*, 682 So. 2d 443, 447 (Ala. 1996); *Sullivan v. Mazak Corp.*, 805 So. 2d 674 (Ala. 2000)(Justice See, concurring in part and dissenting in part).  This is the case because a suit for unjust enrichment is a claim for quasi contract, and a party cannot simultaneously advance claims based on the existence of an express agreement on one hand, and the absence of any agreement on the other.  *Architecture, Inc. v. Miller*, 769 So. 2d 330, 335 (Ala. Civ. App. 2000).  Thus, an unjust enrichment / quasi contract action lies only where there is no express agreement.  *Id.*

Judge Thompson recently discussed this principle in *ASD Specialty Healthcare, Inc. v. Robert G. Hickes, M.D., P.C.*, No. 1:05cv592-MHT, 2006 U.S. Dist. LEXIS 55129 (M.D. Ala. August 7, 2006), where he held that:

> it is black letter law that the predicate for a claim of unjust enrichment is the absence of a contract: "the existence of a contract precludes the existence of a contract implied by law, or quasi contract," 66 Am. Jur. 2d *Restitution and Implied Contracts* § 24, and "when an adequate remedy at law exists, a claim of unjust enrichment will not be entertained." *Id.*, § 30.

*ASD Specialty Healthcare*, 2006 U.S. Dist. LEXIS at *5.

The undisputed evidence in this case is that Southern gave Murphy an express, written warranty. (Exhibit A, p.5, ¶ 24; Exhibit B, p. 76: 6-19) Because there is an express agreement between the parties, Murphy's unjust enrichment claim is due to be denied. Accordingly, Southern requests that the Court enter summary judgment in Southern's favor on the claim of unjust enrichment.

### E.    SOUTHERN IS ENTITLED TO SUMMARY JUDGMENT ON MURPHY'S CLAIM FOR BREACH OF IMPLIED WARRANTY OF HABITABILITY

Murphy alleges a claim for breach of the implied warranty of habitability in Count Five of the Complaint. (Exhibit A, p. 7) This claim fails for factual and legal reasons.

This claim fails factually speaking because Murphy testified that he is living in his home and that the home is habitable. (Exhibit B, p. 149: 8-11)

His claim fails legally speaking for at least two reasons. First, in the Warranty provided by Southern, Southern waived all implied warranties. In *Turner v. West Hampton Court, L.L.C.*, 903 So. 2d 82 (Ala. 2004), the Alabama Supreme Court held that the implied warranty of habitability claim may be waived through a contract or warranty. In that case, the court affirmed the trial court's grant of summary judgment in favor of a homebuilder based on a contractual provision that waived all implied warranties.

The habitability claim also fails because this case involves a manufactured homes, which is a good subject to the UCC. Goods covered by the UCC may carry with them the implied warranties of merchantability or fitness for a particular purpose, depending on the circumstances. By contrast, habitability claims are creatures of common law applicable to real estate. In *Turner*, the Supreme Court discussed one of the earliest cases in Alabama recognizing a habitability claim, *Cochran v. Keeton*, 47 Ala. App. 194, 252 So. 2d 307 (Ala. Civ. App. 1970), where the Alabama Court of Civil Appeals discussed the need to adopt a real estate-based implied warranty theory analogous to U.C.C. implied warranty theories:

> This state long ago adopted the law of manufacturer's liability and has codified the law of implied warranty in the sale of goods by adopting the Uniform Commercial Code (Title VII A, Article 2 – 1967). It is totally incongruous that the purchaser of an automobile, a refrigerator or almost any other item of personal property is protected from negligent manufacture or unfitness of use, but the purchaser of a new home should be at the mercy of an unscrupulous builder and seller.

*Cochran*, 47 Ala. App. At 199, 252 So. 2d at 311-12.

*Cochran* went on to adopt and apply an implied warranty of habitability in a real estate case involving a home. Because the instant cases involve goods under the UCC, the implied warranty of habitability has no application.

In sum, because Southern waived all implied warranties in its Warranty, and the implied warranty of habitability does not apply to goods under the UCC, such as manufactured homes, Southern is due judgment as a matter of law.

## F.    SOUTHERN IS ENTITLED TO SUMMARY JUDGMENT ON MURPHY'S IMPLIED WARRANTY CLAIMS FOR MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE

Murphy alleges two implied warranty claims that arise under Alabama's Uniform Commercial Code. In Count Three of the complaint, Murphy alleges a claim for breach of the

implied warranty of merchantability; in Count Four, Murphy alleges a claim for breach of the implied warranty of fitness for a particular purpose. (Exhibit A, pp. 5-7) Murphy's implied warranty claims fail because he lacks privity of contract with Southern. Furthermore, Murphy's fitness for a particular purpose claim fails because the undisputed evidence shows that Southern had no involvement in Murphy's decision to buy the home in question.

Both of Murphy's implied warranty claims fail because Southern did not sell the home to Murphy; instead, Murphy purchased the home from an independent retail dealership. (Exhibit B, p. 11: 12-23; p. 12: 1-15; p. 147: 21-22) Because Murphy purchased his home from an independent dealer, and the only agreement he has with Southern is a limited warranty, there is no privity of contract between Southern and Murphy and, therefore, his claims for breach of implied warranty are barred by the doctrine of privity.

In *Jenkins Brick Co. v. Waldrip*, 384 So. 2d 117 (Ala. Civ. App. 1980), the Alabama Court of Civil Appeals held that there is no right of action on implied warranty claims against a manufacturer for property damage without privity of contract. *Id*. at 318; *Bryant v. Southern Energy Homes, Inc.*, 682 So. 2d 3 (1986)(under Alabama law, the implied warranty of fitness for a particular purpose does not apply to Southern who is the manufacturer, not the seller); *Hobbs v. General Motors Corp.,* 134 F. Supp.2d 1277, 1281 (M.D.Ala. 2001) (a "remote manufacturer" has been identified as being a manufacturer who is not involved in any transaction with and, therefore, is not in privity with the buyer); *Ex parte Miller*, 693 So. 2d 1372, 1375 (Ala. 1997) (finding no error in directed verdict for remote manufacturer on implied warranty theories and revocation of acceptance issue); *Johnson v. Anderson Ford, Inc.,* 686 So. 2d 224, 228 (Ala. 1996) (absence of privity of contract that arises out of seller/buyer relationship is fatal to implied warranty claim under Alabama version of UCC in cases of strictly economic loss); *Rhodes v.*

*General Motors Corp.*, 621 So. 2d 945, 947-48 (Ala. 1993) (without privity of contract, there is no right of action against a manufacturer for direct economic loss); *Kidd v. Kilpatrick Chevrolet, Inc.*, 613 So. 2d 336, 338 (Ala. 1993) (because Kilpatrick was not the "seller," the implied warranty sections are not applicable).

Moreover, the Alabama Supreme Court has expressly confronted and rejected the argument that a remote manufacturer's provision of an express warranty creates "privity" sufficient to deem the remote manufacturer a "seller" with respect to the buyer. *Rhodes v. General Motors Corp.*, 621 So. 2d 945, 947-48 (Ala. 1993) (regardless of any express warranties that a manufacturer may wish to give with a product, by their very language the commercial code's implied warranty sections apply to the seller of the product).

The fitness claim also fails because Murphy cannot prove the prima facie elements of his claim. To succeed on an implied warranty of fitness claim, a plaintiff must prove three elements: (1) that the seller had reason to know the buyer's particular purpose; (2) that the seller had reason to know that the buyer is relying on the seller's skill or judgment to furnish appropriate goods; and (3) that the buyer, in fact, relied upon the seller's skill or judgment. *Donald v. City Nation Bank of Dothan*, 295 Ala. 320, 324-25, 329 So. 2d 92, 95-96 (1976). All three elements are lacking here.

The record reflects that Murphy had no presale contact with Southern at all. (Exhibit B, p. 11: 12-23; p. 12: 1-15; p. 147: 21-22) Therefore, there was no opportunity, conversation or exchange where Murphy ever informed Southern of particular needs, or had an opportunity to rely on advice provided by Southern. In short, because Murphy had no contact with Southern before purchasing his homes, he cannot claim the benefit of the implied warranty of fitness for a particular purpose.

Accordingly, Southern is due summary judgment as to Murphy's claims for breach of the implied warranties of merchantability and fitness for a particular purpose.

### G.    SOUTHERN IS ENTITLED TO SUMMARY JUDGMENT ON MURPHY'S CLAIMS FOR BREACH OF EXPRESS WARRANTY AND VIOLATION OF THE MAGNUSON MOSS ACT

Murphy urges claims for breach of express warranty (Count Two) and the violation of the Magnuson Moss Act (Count One). (Exhibit A, pp. 4-5) Both claims fail because Southern has not breached any warranty.

Murphy contends that the walls of his home are damaged from *condensation*, due to the location of the vapor barrier. (Exhibit B, p. 154: 10-16; p. 56: 4-19; Exhibit A, p. 2, ¶ 4) However, the Warranty that Southern provided to Murphy excludes warranty coverage for "[d]effects or damages resulting from condensation." (Exhibit C, Homeowner's Manual, p. 8) The law provides that consumers cannot recover under manufacturer's limited warranties for matters that are excluded from such warranties. *Froning v. Toyota Motor Sales*, U.S.A., Inc., No. 1:05cv273, 2006 U.S. Dist. LEXIS 75514, *11-*12 (W.D.N.C., Sept. 12, 2006) (granting summary judgment to manufacturer on defective tire claim where tires are excluded from coverage under limited express warranty); *Owens Transp. Serv., Inc. v. Int'l Truck and Engine Corp.*, No. 1:05cv2897, 2006 U.S. Dist. LEXIS 89083, *10 (N.D. Ohio, Dec. 7, 2006) (granting summary judgment to International where warranty expressly disclaims components warranted by their respective manufacturers, such as the engine); *Eugene Truck Builders, Inc. v. Ford Motor Co.*, 622 S.E. 2d 698, 700-02 (N.C. Ct. App. 2005) (upholding summary judgment in favor of manufacturer where plaintiff had non-Ford parts installed and express written warranty stated that it did not cover "Damages Caused By: … non-Ford parts installed after the vehicle leaves Ford's control"); *Kociubuk v. Huntington Nat'l Bank*, No. 64551, 1994 Ohio App. LEXIS

11, *12-*13 (Ohio Ct. App., Jan. 6, 1994) (holding that trial court properly granted summary judgment on express warranty claims where Hyundai's warranty stated that "damage or failure resulting from misuse, abuse, accident, theft or fire, is not covered").    Here, because condensation claims are excluded under the warranty, Southern is due judgment as a matter of law.

Murphy's Magnuson Moss Act claim fails for the same reason.  The Magnuson Moss Act provides that "a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this title [15 USCS §§ 2301 et seq.], or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief . . ." 15 U.S.C. § 2310(d).  In the case at bar, Murphy is claiming that Southern violated the Magnuson Moss Act because Southern breached state law express and implied warranties.  (Exhibit A, p. 4, ¶ 19)  Under the law, Magnuson Moss claims are derivative from state law warranty claims.  Thus, Magnuson Moss Act liability is predicated on a finding of breach of warranty.[8]    *Rhode v. E & T Investments, Inc.*, 29 F. Supp.2d 1298, 1304 (M.D. Ala. 1998)(summary judgment denied on Magnuson Moss Act claim because question of fact existed as to express warranty claim); *Diaz v. Paragon Motors of Woodside, Inc*., 424 F. Supp. 2d 519 (E.D.N.Y. 2006) (granting summary judgment on plaintiff's Magnuson-Moss Act claim where defendant did not violate its express warranty); *Farley v. Country Coach, Inc*., No. 05-CV-71623, 2006 U.S. Dist. LEXIS 95728, *19 (E.D. Mich. Nov. 14, 2006)(court held that Magnuson Moss Act liability was predicated on state law breach of warranty claim); *Schultz v. General R.V.*

---

[8] Section 2310(d) of the Magnuson Moss Act also contemplates a cause of action for the violation of the statute itself, independent of any breach of warranty.  Such a claim might arise if a warrantor included in a limited warranty language prohibited by the Act itself.  Murphy makes no such claim in this action; his Magnuson Moss Act claim derives from his state law warranty claims.

*Center*, No. 04-72562, 2006 U.S. Dist. LEXIS 63414, *33-*34 (E.D. Mich. Sept. 6, 2006)(summary judgment granted on Magnuson Moss Act claim because court granted summary judgment on plaintiff's express and implied warranty claims).

To the extent Murphy's Magnuson Moss Act claim is predicated on his *express* warranty theory, his claim fails because Southern's Warranty excludes coverage for condensation claims (as discussed above), and Southern is due judgment as a matter of law on the express warranty claim.

Similarly, to the extent Murphy's Magnuson Moss Act claim is predicated on his *implied* warranty theories, his claim fails because the absence of privity bars any recovery.  As discussed above in section F, Murphy's claims for breach of implied warranty under the U.C.C. should be denied because Southern is a remote manufacturer and the absence of privity bars implied warranty claims under Alabama law.  In *Gill v. Blue Bird Body Co*., No. 05-10466, 2005 U.S. App. LEXIS 11626, *10 (11th Cir. 2005),[9] the court held that a manufacturer was entitled to judgment as a matter of law on a Magnuson Moss Act claim because of the absence of privity.

> [W]hile the appellees' Magnuson-Moss claims constitute a separate federal cause of action for breach of an implied warranty, 15 U.S.C. § 2310(d)(1), courts must look to the relevant state law to determine the meaning and creation of any implied warranty. See 15 U.S.C. § 2301(7)("The term 'implied warranty' means an implied warranty arising under State law . . . in connection with the sale by a supplier of a consumer product."). Importantly, courts have uniformly held that Magnuson-Moss does nothing to alter or modify state law privity requirements. The question of whether privity is required thus hinges entirely on applicable state law. *See Voelker v. Porsche Cars N. Am., Inc*., 353 F.3d 516, 525 (7th Cir. 2003); *Walsh v. Ford Motor Co*., 257 U.S. App. D.C. 85, 807 F.2d 1000, 1011 (D.C. Cir. 1986)("Under the terms of Magnuson-Moss, state law governs the existence and basic meaning of implied warranties."); *Abraham v. Volkswagen of Am., Inc*., 795 F.2d 238, 249 (2d. Cir. 1986)("Both the statutory language and the legislative history, therefore, indicate that Congress [in enacting Magnuson-Moss] did not intend to supplant state law with regard to privity in the case of implied

---

[9] This case was not issued for publication.  However, points of law quoted herein are on-point and consistent with other authorities.

warranties."); *Carlson v. Gen. Motors Corp.*, 883 F.2d .287, 291-92 (4th Cir. 1989). In relevant part, state law thus controls appellees' implied warranty Magnuson-Moss claims.

\* \* \*

Finally, because appellees' Magnuson-Moss claims turn on Georgia implied warranty law, appellees' lack of privity similarly defeats their federal claims. *See* 15 U.S.C. § 2301(7). This is notwithstanding the jury's determination that the appellees were "consumers" within the meaning of 15 U.S.C. § 2301(3). Nothing in Magnuson-Moss displaces substantive state law privity requirements governing implied warranty claims. *Voelker*, 353 F.3d at 525; *Walsh*, 807 F.2d at 1011; *Abraham*, 795 F.2d at 249.

*Gill*, 2005 U.S. App. LEXIS at \*9-\*13.

Here, because Murphy and Southern do not stand in privity with one another, Murphy's Magnuson Moss Act claim is due to fail to the extent it arises out of his implied warranty claims.

Based on the foregoing, Southern is entitled to judgment as a matter of law on Murphy's claims for breach of express warranty and violation of the Magnuson Moss Act.

## H.    SOUTHERN IS ENTITLED TO SUMMARY JUDGMENT BECAUSE MURPHY'S CLAIMS ARE BARRED BY THE PREEMPTION DOCTRINE

On May 9, 2007, Southern filed a Motion for Judgment on the Pleadings and a Brief in Support of Motion for Judgment on the Pleadings wherein Southern argued that Murphy's claims are preempted by the federal building code (referred to hereafter as the "HUD Code").[10] (Documents 32, 33-1, 39-1, 49-1, and 49-2)  That Motion has not yet been addressed by the Court.  Pursuant to Federal Rule of Civil Procedure 10(c), Southern incorporates by reference

---

[10] The HUD Code is promulgated by the U.S. Department of Housing and Urban Development pursuant to the Manufactured Home Construction and Safety Standards Act, 42 U.S.C. § 5401 et seq. ("MHCSSA"). The HUD Code is located at 24 C.F.R. § 3280 and § 3282.

said Motion, Brief, Reply Brief and Supporting Documents, which are filed with this Court as Documents 32, 33-1, 39-1, 49-1, and 49-2. Southern urges this Court to grant Southern judgment on the pleadings, or in the alternative, apply the summary judgment standard of Rule 56 to the arguments set forth therein and hold that Murphy's claims are preempted.

Importantly, since Southern moved for judgment on the pleadings, this court decided an identical on-point case holding that the plaintiff's claims are impliedly preempted.[11] *Perry v. Fleetwood Enterprises, Inc*., No. 2:06-cv-502-MEF (WO), 2007 U.S. Dist. LEXIS 73355 (M.D. Ala. Sept. 28, 2007). Southern urges this court to apply the holding of *Perry* to the instant case and grant Southern summary judgment.

It bears mentioning again that HUD itself has already rejected Murphy's position that manufactured home walls constructed with internal vapor barriers are somehow improper or defective. This court will recall that Murphy has argued previously in response to Southern's Motion for Judgment on the Pleadings that Section 3280.303(b) of the HUD Code, which is a general provision of the Code, somehow overcomes and invalidates Section 3280.504(b)(1), which is a specific code section applicable to wall design. (Document 36-1) HUD, through William W. Matchneer III, HUD's Associate Deputy Assistant Secretary for Regulatory Affairs and Manufactured Housing (the HUD official responsible for the enforcement of the Manufactured Home Construction and Safety Standards) expressly rejected such a theory in his letter of January 19, 2007, which states as follows:

---

[11] The same plaintiff lawyers here filed suit in the *Perry* case. The original complaint in *Perry* is nearly identical to the one filed here.

As the HUD official responsible for the enforcement of the Manufactured Home Construction and Safety Standards, I can say that these pleadings consistently misrepresent HUD enforcement policy by arguing that HUD's general standard at 3280.303(b) should be applied to manufacturers' practices regarding the placement of vapor barriers even though these manufacturers have complied with HUD's more specific vapor barrier standard at 3280.504(b).

Consistent with basic principles of administrative law, it is HUD's practice to hold manufacturers accountable for compliance with the standard that most specifically applies to a particular aspect of construction. Accordingly, there is no case in which HUD has applied 3280.303(b) to a manufacturer that has complied with 3280.504(b).

Thank you again for bringing this situation to our attention. HUD has a distinct interest in maintaining an accurate understanding by arbitrators and the courts of HUD's enforcement policies and practices regarding the Manufactured Home Construction and Safety Standards. We would be especially concerned by a reported judicial decision that misstated HUD policy and practice, so please keep us advised of developments in these cases.

(Document 49-2)

Thus, because HUD has already answered the question currently before the Court, the Court should accord broad deference to HUD's interpretation of its own regulation and refuse to revisit this question. *See Barnhart v. Walton*, 535 U.S. 212, 221-22 (2002) (holding that deference should be afforded to agency's interpretation of its own rules even when the interpretation did not emerge from formal rulemaking); *United States v. Mead Corp.*, 533 U.S. 218, 229-234 (2001) (same); *Heimmermann v. First Union Mortg. Corp.*, 305 F.3d 1257, 1261-62 (11th Cir. 2002) (noting that deference should be afforded to HUD interpretations although such interpretations did not emerge out of an official rule-making process); *Price v. Countrywide Home Loans, Inc.*, CV205-15, 2005 WL 2354348 at *7-*8 (S.D. Ga. 2005) (explaining that informal HUD interpretation of rule was to be accorded deference pursuant to binding Eleventh Circuit and Supreme Court precedent, as well as HUD's expertise in regulating the subject of the

case at issue). *Feliciano v. Romney*, 363 F. Supp. 656, 674 (S.D.N.Y. 1974) (noting that "[c]ourts are limited to reviewing the efforts of HUD in carrying out its statutory responsibilities.")[12]

Essentially, by arguing that liability can be imposed upon Southern under 24 C.F.R. §3280.303(b) notwithstanding Southern's strict compliance with the specific provisions of 24 C.F.R. § 3280.504(b)(1), Murphy is really arguing that 24 C.F.R. § 3280.504(b)(1) is irrational to the extent it allows for internal vapor barriers contained in the exterior walls of manufactured homes in "humid and fringe zone climates." In so doing, Murphy would have this Court modify the HUD Code retroactively based simply upon Murphy's opinion of what the HUD Code should say, and hold that millions of previously-conforming manufactured homes are now subject to wide recall or further liability, which respectfully speaking, is a ridiculous position.

Indeed, HUD has actively regulated the issues at hand since 1975. 58 F.R. 54975 (Oct. 25, 1993); 67 F.R. 20400 (Apr. 24, 2002); 69 F.R. 70016 (Dec. 1, 2004); 70 F.R. 72024 (Nov. 30, 2005). Since the inception of the HUD Code, HUD has expressly permitted the use of interior vapor barriers in homes throughout the country. It is within the sole discretion of HUD to decide whether to limit a regulation in terms of geographical application. Most recently, in 2006 HUD amended 24 C.F.R. § 3280.504(b) to permit the use of external vapor barriers in some homes.[13] This amendment limited the use of such external vapor barriers to certain areas within the Gulf region, but did not eliminate or geographically limit any other wallboard design

---

[12] The fact that Murphy's expert, Parks, admitted that the design used by Southern is compliant with Section 3280.504(b)(1), really ends the inquiry in the case. Parks testified that it is permissible for a manufacturer to build walls pursuant to 24 C.F.R. § 3280.504(b)(1). (Exhibit D, p. 182) Recognizing that his design theory is fatally flawed, Parks is actively lobbying the Consensus Committee for HUD to abrogate the use of internal vapor barriers through a change in the regulations. (Exhibit D, pp. 117-120 and 181-82) Respectfully, Southern should not be held liable for a design choice that might be changed some unknown time in the future.

[13] It should be noted that this amendment does not apply here because the Plaintiff's home was manufactured in 2003.

set forth in 24 C.F.R. § 3280.504(b).  If HUD thought it best to limit the use of internal vapor

barriers pursuant to 24 C.F.R. § 3280.504(b)(1) to certain geographical regions, HUD would

have done so.  However, HUD made a conscious choice to refrain from limiting 24 C.F.R. §

3280.504(b)(1) in the manner that Murphy seeks.  Thus, Murphy's argument here amounts to

nothing more than a complaint as to HUD's wisdom in making determinations regarding the

substance of the applicable HUD Code provisions.  Because HUD is the entity charged with the

duty to promulgate and review its regulations, this Court should refuse to entertain such a

complaint and defer to HUD's discretion in fulfilling its Congressional mandate.  *See Chevron*

*U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984) (noting that

"[w]hen a challenge to an agency construction of a statutory provision . . . really centers on the

wisdom of the agency's policy . . . the challenge must fail.  In such a case, federal judges – who

have no constituency – have a duty to respect legitimate policy choices made by those who do.

The responsibilities for assessing the wisdom of such policy choices . . . are not judicial

ones.").[14]

---

[14] In the event this Court has any doubts about the strength of Southern's position with respect to the issue of whether Section 3280.504(b)(1) should not be overcome by the tortured application of Section 3280.303(b) (as Murphy contends), it should nevertheless dismiss Murphy's claims based on the doctrine of primary jurisdiction. The common-law doctrine of primary jurisdiction "comes into play when a claim . . . calls for resolution of issues which, 'under a regulatory scheme, have been placed within the special competence of an administrative body.'"  *Sprint Corp. v. Evans*, 846 F. Supp. 1497, 1505 (M.D. Ala. 1994) (Thompson, J.) (quoting *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64 (1956)).  The doctrine applies, especially as here, when "protection of the integrity of a regulatory scheme dictates preliminary resort to the agency which administers the scheme."  *United States v. Philadelphia Nat'l Bank*, 374 U.S. 321 (1963).  *Ricci v. Chicago Mercantile Exch.*, 409 U.S. 289, 299-300 (1973) (noting that primary jurisdiction applies when conduct that is subject to court litigation "is . . . at least arguably protected or prohibited by . . . [a] regulatory statute . . .");  *Alabama Assoc. of Home Health Agencies v. ABC Home Health & Hospice of Ala., Inc.*, 601 So. 2d 1027, 1030-31 (Ala. 1992) ("while the trial court may have technically had jurisdiction . . . it should have deferred, at the outset to . . . the agency which, by law, administers the . . . program [at issue]");  *Fraternal Order of Police, Strawberry Lodge #40 v. Entrekin*, 314 So. 2d 663, 670 (Ala. 1975) ("the doctrine of

**WHEREFORE, PREMISES CONSIDERED,** Southern respectfully requests that the court enter a full and final summary judgment in its favor, pursuant to Rule 56.

Respectfully submitted,

RITCHEY & SIMPSON, PLLC

/s/ W. Scott Simpson
W. Scott Simpson ASB-3319-S65W
Counsel for Southern Energy Homes, Inc.

OF COUNSEL:
RITCHEY & SIMPSON, PLLC
3288 Morgan Drive, Suite 100
Birmingham, AL 35216-3084
Phone:          205.876.1600
Facsimile       205.876.1616

Thomas W. Thagard, III
Maynard, Cooper & Gale, P.C.
AmSouth/Harbert Plaza
1901 6th Ave. North, Ste. 2400
Birmingham, AL 35203-2618
Phone:          205.254.1000
Facsimile:      205.254.1999

## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that on the 8th day of February, 2008, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of the foregoing upon the following:

C. Lance Gould, Esquire              Jon D. Pels, Esquire
BEASLEY, ALLEN, CROW,                Lawrence J. Anderson, Esquire
METHVIN, PORTIS & MILES, P.C.        Pels, Anderson & Lee, LLC
Post Office Box 4160                 4833 Rugby Avenue, 4th Floor
Montgomery, AL  36103                Bethesda, MD 20814

/s/ W. Scott Simpson
OF COUNSEL

---

primary jurisdiction implies that matters entrusted by the legislature to an administrative agency, ought first be considered by that agency"). The doctrine counsels a court to dismiss or stay a matter "pending referral of such issues to the administrative body for its views." *United States v. Western Pacific Railroad Co.,* 352 U.S. 59, 63-64 (1956).