IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA,
NORTHERN DIVISION

| | |
|---|---|
| HAROLD KELLY MURPHY, ) | |
| ) | |
| Plaintiff. ) | |
| ) | |
| v. ) | Case No.: 2:06-cv-618-MEF |
| ) | |
| SOUTHERN ENERGY HOMES, INC., ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## DECLARATION OF DAVID TOMPOS, PE

1. My name is David Tompos. I am over the age of eighteen years and make this declaration based upon my personal knowledge.

2. I am a practicing professional engineer with approximately 37 years of engineering experience in the manufactured housing industry. I am a registered engineer in 23 states, including Alabama. My curriculum vitae is attached as Exhibit 1.

3. I was contacted in 2007 by Scott Simpson to assist him in evaluating the reports and opinions of Bobby Parks and Robert Kondner regarding the Murphy residence at 5489 Washington Ferry Road, Montgomery, Alabama. I have prepared a written report of my findings, a copy of which is attached as Exhibit 2.

4. Based on two personal inspections of the property and a careful review of the investigation and conclusions of Mr. Parks, it is my professional opinion, to a reasonable degree of scientific certainty, that Parks and Kondner do not have a firm grasp of the design and engineering principles embodied in the HUD Code or of how the HUD Code operates. It is also my opinion that Parks' and Kondner's conclusions regarding the Murphy home's Code



compliance and structural deterioration of the walls are not justified by the methodology or the data collected in their investigations.

5. First, Parks does not appear to be qualified to speak to design issues in the Murphy home, and his deposition testimony and conclusions display a fundamental misunderstanding of how the HUD Code operates. Parks is not an engineer, has no college education whatsoever, and has had no training in any architectural or engineering programs that address how to properly design a mobile home. His experience is that of a HVAC repairman, not of an engineer or design expert. Furthermore, he is not familiar with the basic design principles employed by HUD Code section 3280.504(b) or with the proper interpretation of the HUD Code generally.

6. Parks concludes that the wall construction standards used for the exterior walls in the Murphy home violate HUD Code Sections 303(b) and 504(b). This conclusion is false, and its reasoning shows that Parks does not understand how the HUD Code operates.

7. HUD develops its safety standards for the Code through a consensus process that relies on professionals with engineering expertise who provide conclusive technical documentation on issues to establish sound engineering practices. As a result, the Code embodies sound engineering practices, and meeting the specific requirements of this Code that is developed in this manner therefore conforms to sound and accepted engineering practices.

8. Section 504(b) of the Code allows for 4 alternative designs for exterior walls in mobile homes: 1) living side vapor barrier of one perm or less, or 2) unventilated wall cavities sealed by a pressure envelope of at least five perms, or 3) ventilated wall cavities, or 4) homes in Zone 1 may place the vapor barrier on the opposite side of the wall from the living space. Each of these alternative construction designs has been deemed by HUD to represent good

engineering practices. Nothing in the Code prohibits the use of a 504(b)(1) wall construction in Zone 1. Furthermore, HUD does not have data, research, or other information that would justify restricting the use of 504(b)(1) homes to Zones 2 and 3.

9. The Murphy exterior walls are constructed with vinyl covered gypsum wallboard with a perm rating of less than 1 on the living side of the walls. This construction method complies explicitly with Section 504(b)(1). The wall designs utilized in the Murphy home are the most widely used condensation control method in the industry for all climactic conditions and have been approved by a third party inspection agency comprised of engineer design professionals as required by the HUD regulations.

10. HUD has explicitly stated that the specific requirements of Section 504(b) trump the general requirements in Section 303(b). Parks' and Kondner's arguments to the contrary fundamentally misrepresent HUD's code interpretation and its enforcement policy.

11. In addition, HUD Code Section 508(c) explicitly allows for thermal shorts that cover up to one percent of the total exterior wall surface area. The areas identified in Parks' infrared pictures that display temperature differentials of an unknown magnitude compose an aggregate area of far less than one percent of the exterior wall surface area. Therefore, the walls conform to that aspect of the HUD standards as well. The fact that Parks does not acknowledge that thermal shorts are allowed under the HUD Code underscores his lack of familiarity with the Code.

12. In addition to Parks' and Kondner's lack of qualifications as design experts or HUD Code experts, their facts and data do not logically support their conclusions. The conclusion that "serious non-compliant code issues" are "causing structural deterioration" is refuted not only by the HUD Code issues previously discussed, but also by a lack of evidence of structural

deterioration in the walls themselves. Parks relies on moisture meter readings to conclude that the walls have excessive moisture accumulation, but he never tests the actual moisture content of the walls.

13. The results of testing by an independent accredited laboratory certified to test gypsum wallboard shows that the vinyl covered gypsum board from the Murphy home not only conforms to industry performance standards, but actually exceeds the industry standards by a considerable margin. Specifically, portions of the gypsum wallboard were removed from the Murphy home and sent to an independent accredited laboratory for testing in accordance with ASTM standards, accepted as the industry standard for gypsum testing. The test results showed that the Murphy wallboard *exceeded* the industry standard for flex strength by 87%, for core hardness by 236%, and for nail pull resistance by 83%. Ignoring the actual physical condition of the walls in the Murphy home is a fatal flaw in his methodology and conclusions.

14. In short, to a reasonable degree of scientific certainty, it is my opinion that both Parks and Kondner are unqualified to offer any opinions that relate to the code compliance or design aspects of the Murphy home, and that their conclusions are unsupported by the facts.

    I declare under penalty of perjury that the information contained in this declaration is true and correct to the best of my knowledge.

    Executed on this the 6th day of February 2008.

_David Tompos, P.E._
David Tompos